## DORIS BELLMAN v. NORTHERN MINNESOTA ORE COMPANY.[1]

May 7, 1926.

No. 25,299.

**Finding of accidental fatal injury to employe sustained.**

1. There is evidence to sustain the finding of accidental injury received by the employe in the course of his employment which resulted in his death.

**Law not misapplied in decision of Industrial Commission.**

2. The memorandum of the Industrial Commission construed to show no misapplication of law in the decision.

Workmen's Compensation Acts, C. J. p. 86 n. 81 New; p. 115 n. 37; p. 122 n. 40.
See notes in L. R. A. 1916A, 40; 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.
See note in L. R. A. 1918F, 877.

[1]Reported in 208 N. W. 802.

Certiorari to review the Industrial Commission's award of compensation for the accidental death of relator's employe in a proceeding under the Workmen's Compensation Law. Affirmed.

*Ryan, Ryan & Ryan,* for relator.

*Murphy & Cook,* for respondent.

HOLT, J.

Certiorari to review an award of the Industrial Commission for the accidental death of relator's employe.

The referee found that the employe sustained an accidental injury to his head and "that such accident and injury arose out of and in the course of his employment." * * * The quoted finding was the only finding of fact specifically challenged by the employer in the appeal to the commission. The commission approved and adopted the findings of the referee. No doubt could have arisen as to there being evidence sufficient to sustain the finding mentioned but for the memorandum filed—not made a part of the decision of the commission.

The situation was this: Emil Bellman was employed by relator as its watchman of the mining property on the Cuyuna range, this including a number of dwellings and buildings of various kinds, farming lands and mining paraphernalia. Bellman had the privilege of keeping some cows and a team on the place and tilling such part as he might desire, and to occupy a dwelling and necessary barn room on the location. He sometimes used the team for work requested by relator, but was then paid extra in addition to his monthly wage. Owing to the feed shed being infested by rats, he kept oats for the horses in one of the other buildings. The door of that building would not stay shut, necessitating frequent trips to close it. Some boards had also been nailed across the door so that in entering a person must stoop low. On the occasion when Bellman was injured he claims that he noticed the door open, and going to shut it he took a bag along to get some oats out before shutting the door. He sacked the oats and threw the bag out, and in attempting to force the door closed struck his head against the boards men-

tioned. It afterwards developed that this blow was of sufficient severity to cause some deterioration of the brain tissues, finally resulting in death.

Proceedings for compensation were started while Mr. Bellman was alive and his testimony was taken. However, his mind was already affected from the injury or from the operation undertaken to relieve or cure him, so that his version of the purpose of going to the building where his injury happened and the manner of its happening was at times incoherent and perhaps contradictory to some extent. But the sum and substance could be found by the triers of fact to be this: That he saw the door open; that he concluded to shut it, but before so doing it occurred to him that on the same trip he might do an errand personal to himself, viz., replenish the oats in the feed bin; that having done so he attempted to close the door, and in that act, certainly one within the scope of his employment, he was injured. Of course, it is not to be denied that the referee and the commission could have arrived at the conclusion very readily that the petitioner had not sustained the burden the law imposes upon an employe seeking compensation for an accidental injury, or in other words that Bellman was engaged in no work for the employer when his head came in contact with the boards nailed over the doorway.

The Industrial Commission was alive to the importance of the finding of the referee challenged on the appeal, and we take the memorandum to go no farther than to hold that, since Bellman had permission to keep horses for his own use on the place and necessarily to care for and feed them, he could combine that work with that of watchman when occasion permitted and when so attending to both combined there was no departure from the scope of his employment, especially when, as here, he was injured in the very act he started out to do as a watchman, viz., close the door he had noticed standing open. In that view of the memorandum, we do not perceive that the commission in any manner misapplied the law. It could very well find that the trip to the building was not primarily to fetch oats, but to close the door, in which act he was injured. In

reviewing a decision of the commission our power is limited. Its "findings are conclusive if supported by evidence from which a reasonable mind could draw such conclusions." Dunnigan v. Clinton Falls M. Co. 155 Minn. 286, 193 N. W. 466.

The decision is affirmed.