## HENRY BEHR v. HENRY SOTH.[1]

February 18, 1927.

No. 25,794.

**Members of fire department are within compensation act.**
1. Under G. S. 1923, § 4326 (g-1), firemen are within the operation of the workmen's compensation act.

**Collision between chief and deputy chief arose in course of their employment.**
2. Plaintiff, a fireman, was riding a fire truck to a fire. The chief of the fire department driving to the same fire collided with the truck at a street intersection, injuring plaintiff. *Held:* The services of the firemen required their presence at the place of accident; the accident arose out of and in the course of their employment notwithstanding that (1) the council had not designated the car used by the chief as fire apparatus, (2) that the chief did not select the shortest route or (3) that the accident arose out of a street risk.

[1]Reported in 212 N. W. 461.

**Plaintiff could seek compensation from his employer or from the chief.**

3. Under G. S. 1923, § 4291 (1), plaintiff, the fireman, had a right to seek compensation from his employer, the city, or damages from the chief who was a third party engaged in a common enterprise, but not both.

Third party clause construed to include an employe.

**Plaintiff could not deny his election to take compensation.**

4. Upon the facts stated in the opinion the plaintiff was estopped from denying an election to take compensation.

Where an employe pursues the employer for compensation under the mistaken impression that the law afforded him no other remedy or an additional remedy, equity, in the absence of injury to others or of facts creating an estoppel, may relieve him from his apparent election.

Election of Remedies, 20 C. J. p. 19 n. 34; p. 22 n. 44, 45; p. 23 n. 46; p. 25 n. 47; p. 29 n. 73; p. 37 n. 42, 44, 46.
Workmen's Compensation Acts—C. J. p. 49 n. 52; p. 77 n. 97; p. 80 n. 25; p. 140 n. 93, 94; p. 141 n. 3.

See note in L. R. A. 1918F, 191; 10 A. L. R. 201; 28 R. C. L. 722; 4 R. C. L. Supp. 1838.

Plaintiff appealed from a judgment of the district court for Freeborn county, Peterson, J. Affirmed.

*H. H. Dunn* and *Moonan & Moonan*, for appellant.
*Meighen, Knudson & Sturtz*, for respondent.

WILSON, C. J.

Plaintiff appealed from a judgment entered pursuant to an order for judgment notwithstanding a verdict for $20,136.74. The action sounds in negligence and was to recover for personal injuries suffered by plaintiff in a collision at a street intersection, between an automobile driven by defendant, the chief of the fire department at Albert Lea, and a fire truck upon which plaintiff, the assistant chief of the fire department, was riding. The answer alleged that both were employes of the city of Albert Lea and subject to the workmen's compensation act and that plaintiff had elected to proceed under said act. This was denied by the reply.

1. Under the city charter and the constitution of the fire department it is the duty of the chief to command the fire department, and when on duty at a fire to observe that every member does his duty. The charter vests in the council the power to purchase apparatus for the fire department and to determine what its equipment shall be. The department keeps fire trucks and full-time drivers at the station. It is manned by volunteers who are local business men. They catch and ride the trucks to the fires. The chief's place of business is about eight blocks from the station. He has little if any opportunity to catch a truck going to a fire. Defendant received a salary from the city of $25 per month; and plaintiff $20. Duty required defendant to arrive at the fire first, if possible. He owned a car, having a loud horn, which he used in going to fires. On May 27, 1924, both of the parties responded to a fire alarm and while enroute the collision occurred resulting in serious injury to plaintiff.

G. S. 1923, § 4326 (g-1), provides that the word "employe" does not include an official of any city who has been appointed for a regular term of office. Upon this plaintiff bases a claim that the chief of the fire department is an official and hence not subject to the compensation act. Under the charter the chief is appointed annually but may be released at the will of the council. Defendant claims the chief is not appointed for a regular term. We do not find it necessary to pass upon the question because in our opinion a proviso in the statute is controlling. State v. Twin City Tel. Co. 104 Minn. 270, 116 N. W. 835. It reads: "Provided, however, that sheriffs * * * policemen and firemen shall be deemed employes within the meaning of this section." The word "firemen" means those whose duty is to extinguish fires and to protect property and life therefrom. Clearly both the chief and his assistant were "firemen" within the meaning of this statute. Before the word "firemen" was used in the compensation act this court held that a fireman was an employe under the compensation act as it formerly existed. State ex rel. City of Duluth v. District Court, 134 Minn. 28, 58 N. W. 791, Ann. Cas. 1918B, 635; Segale v. St. Paul City Ry. Co.

148 Minn. 40, 180 N. W. 777. See also Hubert v. Granzow, 131 Minn. 361, 155 N. W. 204, Ann. Cas. 1917D, 563.

2. It is claimed that the accident did not arise out of and in the course of the employment as required by G. S. 1923, § 4269. Plaintiff's argument rests upon the suggestion that the city council was required to act affirmatively before a contractual liability could be imposed upon a municipality and that the council which was authorized by the charter to equip the fire department did not designate defendant's car as an authorized vehicle to convey the chief to a fire. It is claimed that he had no right as chief to use his private car and was doing an act wholly personal to himself outside the scope of his employment. In substance the claim is that the council selected a fire chief whose duties were to begin when he arrived at the fire. Our attention is called to G. S. 1923, § 4326 (j), which says:

"Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury," etc.

But did not the service of both plaintiff and defendant require them to be at the place of the accident? What are the duties of firemen, particularly the chief and his assistant? They are in charge of the department and its equipment. They are charged with the proper handling of fire equipment on the streets. There is a special hazard involved in the operation of fire apparatus greater than involved in the operation of other vehicles. This is true not only of the inherent characteristics of fire apparatus but of any automobile because of the necessary speed involved. Fire apparatus on the way to a fire is not subject to speed regulations or traffic signals. Hubert v. Granzow, 131 Minn. 361, 155 N. W. 204, Ann. Cas. 1917D, 563; Edberg v. Johnson, 149 Minn. 395, 184 N. W. 12. When firemen are going to and from fires it is their duty to see that care is used commensurate with the risk incident to protect themselves and also as far as possible to guard the public from the extraordinary street risks incident to the presence of the department or its vehicles. Defendant was responsible for the general movements of his de-

partment upon the streets. Aside from being an assistant to the chief, it was plaintiff's duty to ride the truck to the fire. He was thereby exposed to unusual dangers. It is difficult to see how the employer could escape liability under the act if plaintiff had merely fallen from the truck. It is urged that since the chief drove his car without the council having officially designated it as fire apparatus he was not on duty but outside the scope of his employment. We cannot give our assent to this assertion. The chief's contract of employment carried with it very definite duties including street duties as indicated and also to go to fires which exposed him to dangers not common to the public. He had to travel faster than the public. This exposure was incident to his employment—was solely because thereof. Having assumed such risks and burdens, the moment he responded to the fire alarm the law also clothed him with the benefits which are also incident to his employment. How was he to go? No conveyance was provided. Again duty commanded, as an incident to his employment, to choose a method that would promptly bring him to a fire. No one can claim that he did not choose wisely. He did the natural and ordinary thing.

It is also claimed that the chief did not choose the shortest route to reach the fire and that if he had done so the collision would not have occurred. This claim is without merit. He was confronted by an emergency. He doubtless acted according to the dictates of his best judgment under the circumstances. Whether his conduct in this respect was such as to constitute negligence we do not consider, but do hold that his selection of his course of travel did not remove him from the scope of employment.

We reach the conclusion that the accident arose out of and in the course of the employment of plaintiff and defendant. The fact that the accident was a street risk does not preclude such conclusion. Hansen v. N. W. Fuel Co. 144 Minn. 105, 174 N. W. 726; Bookman v. Lyle C. & R. Eq. Co. 153 Minn. 479, 190 N. W. 984. There are other cases tending to support the result. McDaniel v. City of Benson, 167 Minn. 407, 209 N. W. 26; Bellman v. Northern Minn. Ore Co. 167 Minn. 269, 208 N. W. 802; Beaver City v. Industrial Comm. Utah, 67 Utah —, 245 Pac. 378; Reese v. Nat. Surety Co.

162 Minn. 493, 203 N. W. 442; Workman v. Endriss, 164 Minn. 199, 204 N. W. 641; Lake v. City of Bridgeport, 102 Conn. 337, 128 Atl. 782; State ex rel. McCarthy Bros. Co. v. District Court, 141 Minn. 61, 169 N. W. 274; Stevens v. Village of Nashwauk, 161 Minn. 20, 200 N. W. 927.

3. Plaintiff's injuries were caused by circumstances creating a legal liability for damages on the part of a party other than the employer, namely, defendant, who like plaintiff was subject to the provisions of part 2 of the compensation act. The two employes, plaintiff and defendant, and the employer, the city, were engaged in the due course of business in furtherance of a common enterprise. This gave plaintiff the option to proceed against defendant to recover damages or against the employer for compensation under part 2 of the compensation act, but not against both. G. S. 1923, § 4291 (1); Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N. W. 75. See also additional opinion on reargument in same case, 168 Minn. 326, 212 N. W. 20.

It is contended by plaintiff that the third party in G. S. 1923, § 4291, "where an injury * * * is caused under circumstances also creating a legal liability for damages on the part of any party other than the employer," etc., means an employer. Perhaps it has been ordinarily thought of in that light. It apparently was in Podgorski v. Kerwin, 144 Minn. 313, 175 N. W. 694. Also in Uotila v. Oliver Iron Min. Co. 165 Minn. 475, 206 N. W. 937. That point was not before the court in either of these cases. In Hade v. Simmons, 132 Minn. 344, 157 N. W. 506, the defendant was an employe. This was under a prior but similar statute. No one suggested that "third party" included only employers. There is some force in the argument that the compensation act was never intended to limit liability of employes as to each other. It is recognized as a law for the protection of the employe. In Rasmussen v. George Benz & Sons, supra, page 325, it was said:

"From a civic, economical, and sociological point of view this position is sound. This reasoning rests upon the fact that the employe should get from the third party the same award that he would

get from his own employer if it alone were responsible for the acts proximately causing his injury. Being engaged in a 'common enterprise' or in the 'accomplishment of the same' or 'related purposes' in operation on the premises puts all the employers so engaged in the relative, if not actual, position of an employer of any such employe. The third party being guilty * * * should carry the burden in preference to the employer, but the community of interest in accomplishment and purpose should, under such circumstances, protect the third party from a greater award than would be imposed upon the employer; and the employe, under such conditions, should not be required to take less than the award which would come to him if the responsibility rested with his employer. In short, the community of interest gives the third party, who is subject to the compensation act, under this statute the status of an employer toward the employe."

In the Rasmussen case the third party was an employer but its liability depended upon the negligence of its employe. If the employe was not liable then there was no liability. The reasons assigned in justification for the imposition of the liability may be equally applicable when the third party is an employe. Perhaps the legislature intended to protect a third party employe by limiting his liability to that which the injured employe would receive from his employer. The legislature did not say that the third party meant only an employer. The language used may mean either. Construing it as having the ordinary meaning it includes both. We see little reason why the legislature should make any distinction as to the character of the third party. The main thing is to protect the injured employe and if liability is imposed upon a third party it is because of his violation of duty. The legislature may have concluded that it would be unfair to the wrongdoing employe to make him pay more than the employer should pay for doing precisely the same thing. Under the statute plaintiff had the option to seek compensation from his employer or pursue defendant at law to recover damages which by the terms of the statute would be limited in amount and manner of payment as if compensation.

4. The injury was received May 27, 1924. The city of Albert Lea carried compensation insurance with the Travelers Insurance Company. Defendant carried liability insurance on his car with the same company. On June 11, 1924, the insurance company began making partial payments under the compensation act. Thirty-four payments covering one, two or more weeks were made on the basis of $20 per week. On July 27, 1925, shortly after the commencement of this action, for obvious reasons they were discontinued. The receipts are on printed form 26 of the industrial commission and we quote one:

## DEFENDANT'S EXHIBIT 20.

"State File No. 37566 P.

"Employer's or Insurer's No. B417482.

"Partial Payment Receipt Under Workmen's Compensation Act.

"(Received Nov. 17, 1924 Industrial Commission of Minn.)

"Employer: City of Albert Lea.

"Injured: Henry Behr.

"Address: Albert Lea, Minn.

"Received of the Travelers Insurance Company the sum of Twenty and no/100 Dollars ($20.00), said amount being such part of the weekly wages of Henry Behr for the period of one week from the 29th day of Oct. 1924, to the 5th day of Nov. 1924, as I am entitled to under the above Act on account of an accident sustained by me, Henry Behr, on or about the 27th day of May, 1925, while in the employ of City of Albert Lea.

"Witness my hand and seal this 14 day of Nov. 1924, at Albert Lea, Freeborn County, Minnesota.

> "Name: Henry Behr (Seal)
> "Address: 714 Jefferson
> "(Received Nov. 15, 1924, Minneapolis Cl. Div.)

"Witness:

"Irvin P. Erickson.

"Wage per week, $38.08

"Compensation per week, $20.00

"Number of Weekly Payments made, 23

"Total Amount Paid: $400.00."

The insurer which carried the compensation insurance with the city paid $1,136.79 for doctors, hospital nurses and medical expenses with the knowledge of plaintiff. On June 4, 1924, the industrial commission wrote a lengthy letter to plaintiff explaining things relative to the compensation act which were important to an injured employe. He gave information in response thereto. On June 13, 1925, plaintiff caused a lawyer at Albert Lea to write a letter to the insurance company complaining of delay and pointing to their policy with the city. The same lawyer wrote another letter to the commission on July 8, 1925, to the same effect. On October 8, 1925, the commission wrote a letter to plaintiff advising that the insurance company proposed to discontinue payments after July 22, 1925. In response plaintiff sent to the commission a doctor's certificate showing plaintiff was entitled to further compensation.

This action was started on April 4, 1925. On the trial plaintiff offered to prove that on May 27, 1924, a representative of the insurance company told plaintiff they would send him weekly payments of $20 under the compensation policy and that, when he had sufficiently recovered so that the amount of his disability could be determined, settlement would be made with him for his injuries as to his claim against defendant and the city. He also offered to prove that he had no attorney and did not know that he was required to make an election and that he did not intend to make an election.

Where the remedies afforded are inconsistent, as here, the election of one by the claimant, with full knowledge of the important facts affecting his rights, operates as a bar to the other. The assertion of one remedy involves a negation of the other. If it develops that he has no cause of action in the course selected the consequence does not bar a pursuit of the other remedy. In such a case there would not be two inconsistent remedies. The offer of proof however embraces the statement that the employe did not know that he was required to make an election. He did not expressly say that he did not know that he could not pursue both remedies. By inference we may conclude that the offer meant that the employe thought

he could pursue both. In this he was mistaken. He could pursue either but not both. If he pursued the employer for compensation under the mistaken impression that the law afforded him no other remedy or that it also afforded him an additional remedy, equity in the absence of injury to others, or of facts creating an estoppel, may relieve him from his apparent election made under such mistake and permit him to pursue the more advantageous remedy. 20 C. J. 37.

Money received by an employe under the compensation act is "compensation." Money received by him from the third party for injuries from negligence is "damages." Plaintiff's conduct indicates that he knew what he was claiming and that he was accepting the fruits of the compensation law. He cannot be heard to dispute what he was clearly and consistently doing with full knowledge. The offer says he did not have a lawyer at the time of the talk with the insurance agent but he did have a lawyer soon after, who wrote the two letters to the commission which were impossible upon the theory of the offer of proof. He should have learned his rights long before the compensation was discontinued. The court was right in excluding the offer because the record shows that he was guilty of such conduct that he was estopped from saying he did not know the law and hence he cannot now deny an election to take "compensation," and that the conduct of the employe was such, regardless of his mistake as to his legal right, as to estop him from being heard to deny the election. He availed himself of compensation to the extent of his expenses of $1,136.79 and also the weekly payments for 60 weeks amounting to $1,200.

In view of our conclusion it is not perhaps very important whether an election was made or not, because the amount of plaintiff's recovery in this case would be the same whichever defendant was required to pay. Rasmussen v. George Benz & Sons, supra.

Affirmed.