Strafford, }
Dec. 4, 1928. }

ABBIE B. SMITH, *Adm'x, v.* TWIN STATE GAS & ELECTRIC COMPANY.

*Conrad E. Snow* and *Richard E. Shute* (*Mr. Snow* orally), for the plaintiff.

*Hughes & Burns (Mr. Hughes* orally), for the defendant.

ALLEN, J. A leak in the defendant's gas main under a highway in Dover caused an escape of gas which entered a drainpipe from some catch basins of which the gas rose and passed into the air. There was nearby an underground telephone conduit which contained ducts in some of which were cables and others of which were empty. The conduit led to the basement wall of a building and the ducts were carried through the wall, the empty ones being closed on the inside of the wall with wooden plugs. Some of the escaped gas entered this conduit and became pocketed in the ducts as far as the plugs on the inside of the wall of the building. Mixed with the air therein, it formed a dangerous explosive.

The defendant carelessly delayed action to find and stop the leak after notice of it. From previous experience it knew there was some chance that gas escaping in the vicinity of the leak might enter the conduit and work along in the ducts as far as the wall of the building through which the ducts passed.

The decedent was the chief of the Dover fire department. A police officer called his attention to the fact that gas was escaping in the highway, and the decedent requested the officer to ask the janitor of the building to which the telephone conduit led to let the decedent know when he was to be on hand at the building. This was done, the decedent went to the building, and with the janitor entered the basement to investigate. While examining the ends of the telephone ducts on the wall in testing for the presence of escaped gas, the mixture of gas and air in the ducts exploded and one of the plugs flew out and struck him with fatal effect.

Respecting the claim of the decedent's lack of care, in the law of negligence motives for conduct affect its quality, and standards of conduct depend upon the results sought to be obtained. A doctor needed at a patient's bedside, a driver of a fire truck to a fire, may reasonably take more chances in meeting travel on his way than one who speeds for the sensation and pleasure of it. While in general the conception of care is the taking of ordinary precautions to avoid injury and one who knowingly elects to enter into instead of to avoid a danger cannot be held careful towards himself, cases are found where such conduct is treated as proper in a legal sense. When one goes from safety into danger to save others, and possibly the property of others, in imminent danger, the issue of his care is generally regarded as one of fact. See *Kambour* v. *Railroad*, 77 N. H. 33, 49, 50. In such cases,

while no care of self-protection may be used, yet since it is reasonable to dispense with such care, the conduct is usually held to be not necessarily and as a matter of law negligent.

It is said in the *Kambour* case (*p.* 47): "*volens* means wishing, not willing; and it by no means follows from the fact that a person is willing to chance being injured, that he wishes, or even is willing, to be injured." Whether *volens* means wishing rather than willing may be questioned, but further, if one may be willing to chance being injured, he at least is willing to be injured rather than not take the chance of it, for otherwise his action would not be taken. And in taking this chance he does not use ordinary care for his own protection, unless it be assumed that the ordinary man would have and be influenced by the same motives to take it. If the ordinary man has such attributes of heroism, especially towards strangers, it would seem to follow that heroism is an ordinary and not unusual virtue. Common understanding is to the contrary.

In many cases in other jurisdictions a line is drawn between ordinary care and reckless folly in such situations. But the conduct is reckless in the sense that reckoning for one's own safety is not taken, and since it is not to be said that the ordinary man has sufficient courage, altruism, and spirit of self-sacrifice to incur such risks, even with such motives, when under no more than a moral duty at best to do so and when the risk is incurred for the benefit of persons not closely related by kinship or friendship to him, it would seem more logical and consonant with justice to say that in such cases the law excuses the lack of care in self-protection and makes an exception to the general rule that contributory negligence is a defence. Further, in jurisdictions where it is held that the intervention is not necessarily negligent, no recovery, it is understood, is allowed for the value of the service of intervention, which, although not requested, is causally as much the result of the defendant's negligence as the injuries sustained. The value of such service, it would seem, is as much an element of damage as the value of one's time given to the repair of his damaged property.

Accordingly, in what is believed to be the real situation in such cases, the legal quality of fault or blame in the careless act is placed on the same footing as its moral quality which overlooks fault or blame by reason of the motives for the act. It may be an exception to, but it is not a violation of, legal doctrine to say that there is such a thing as reasonable or excusable carelessness on a plaintiff's part. Exceptional situations may properly call for exceptions to general legal

doctrines, and contributory negligence is not invariably and without exception a defence in actions for negligence. An intervenor's right of recovery in spite of his lack of care, when given, is comparable with the right of recovery under the last chance doctrine, which is similarly an exception from the usual effect of a plaintiff's negligence and, it would seem, for less meritorious reasons.

But when the act is performed, as here, in the course of official service if not as a legal duty, it is not to be said that performance of the service or duty is negligence which will bar recovery. If only men of adventurous spirit and with less than normal regard for their safety enlist to become members of the crew of a submarine, they are not to be found in fault for so doing. The law in advance makes their action valid and proper, and it will not hold them in blame for the consequences of taking the action. The undertaking is a circumstance in the light of which their subsequent conduct is to be judged, but the undertaking itself, being lawful, is not to be made wrongful or a bar to recovery under any claim of its negligent character.

As to the claim of the decedent's negligence in the manner of performing his service, the janitor of the building where the fatality occurred testified that in making the test at the duct the decedent lighted a match, with some doubtful protest by the janitor, and the explosion instantly followed. If the only reasonable conclusion is that the decedent did light a match whose flame was the immediate cause of the explosion, the further conclusion of his negligence in so doing is not compelled. While it may be common knowledge that a substantial amount of gas in mixture with air is an inflammable explosive so as to make it careless to apply a flame to it, there was here no necessary indication of such a quantity of gas, and in fact the odor of gas in the basement was slight. It is more or less well known that in testing pipes for leaks flame is applied on the pipes. And it might fairly be said that the decedent acted in a practical and proper way, considering the evidently slight amount of gas to be noticed and the conclusion that its entrance was through a very small aperture. The telephone ducts near which the decedent stood were all closed, and it did not appear that he had evidence to indicate that there was in fact gas in or about the ducts. He was investigating for the possible presence, and not dealing with the known or probable presence, of the gas. Considering the fact that he was acting in the course of his public service, what he did was inconclusive in showing negligence and might be found consonant with ordinary care.

The defendant's careless delay in locating and stopping the leak

may be found to have had causal connection with the fatality. It may be conjectural to say that the gas would not have entered the telephone ducts and remained there until the time the explosion happened had there been no such delay. But with seasonable action the leak would have been repaired so as to obviate the occasion for the decedent's investigation. He was searching into a continuing and existing escape of gas and not seeking to find out about a past occurrence. Seasonable repair of the leak would have avoided his entry into a dangerous situation, while the defendant's careless delay in a natural and proximate way led to his entry and the ensuing circumstances culminating in the explosion. If the carelessness did not produce the danger of an explosion of escaped gas, it produced additional danger of explosion in the demand it made for investigation in the public's behalf, and shared as a substantial cause of the explosion which occurred in the investigation. Anticipation of the investigation and the way in which it was carried out might be found to be within the reasonable foresight of what was likely to happen from the defendant's dilatory conduct. The decedent's conduct was not wrongful, and his innocent intervention as a matter of public duty or service did not necessarily break the causal relation between the defendant's wrong and his damage.

The main question is of any duty of care owed by the defendant to the decedent while engaged in his public service of investigating a dangerous situation which its carelessness maintained. The defendant urges that no relation existed between the parties in which the law imposed the duty of care to avoid the occasion for the decedent's incurrence of the danger, and relies upon *Clark* v. *Railroad*, 78 N. H. 428, in support of a doctrine that public servants whose duty as such requires them to investigate and abate dangers may not recover if, while thus performing their duty, they are injured from the course such a danger takes, although the danger was due to the defendant's lack of care. The plaintiff argues that the case comes within the broad principle that a negligent actor should be held for all the consequences of his act reasonably to be foreseen, and asserts with force and vigor that the *Clark* case goes no farther than to hold that there was no evidence showing that the defendant there should have reasonably anticipated injury to the plaintiff as a fireman fighting the fire its carelessness started.

Examination of the opinion in the *Clark* case shows that this assertion pays but scant respect to its thought and language. Overlooking the fact that the question in the case was of the validity of a

demurrer to the declaration and not of the sufficiency of the evidence to show whether anticipation might be called for, it also ignores the express statement in the opinion that "The question here is not one of proximate or remote cause, but whether the defendant owed any duty at all to the plaintiff, — whether, apart from his contract of employment, [later in the opinion held to make no difference] it stood in any legal relationship to him, however remote."

That the business of fighting fires is in no way dangerous enough for any danger in it to be reasonably foreseen, is a proposition which the *Clark* case is not rightly to be charged with supporting. If the plaintiff there had been the owner of the property burned, anticipation of the injury, it would seem, would have been a warranted finding as a proper requirement of care, and as much to be foreseen was the call and presence of firemen. It is too well recognized that fire fighting is attended with danger of a serious nature to need evidence to support it. In *Lunt* v. *Company*, 48 Col. 316, it is said: "The life of the fireman is an heroic one. Daily, in the discharge of his duties, he performs acts of the truest heroism, which go down unheralded and unsung. He consecrates his life to his work, and, when it becomes necessary, unflinchingly offers up, as a sacrifice to the public, his own well-being, his life and the future welfare of his wife and children." If this language is overdrawn, it at least expresses what everyone knows, that the control and extinguishment of fires in which the public are concerned is attended with risk and peril, and fair-minded men may well say that one setting such a fire should reasonably foresee any injury to anyone engaged in such service.

What the plaintiff really argues consists of two main propositions, one, an invitation to overrule the *Clark* case or at least to reconsider the grounds on which its result was reached, and two, that the decedent did not incur a known danger.

The *Clark* case holds as to the volunteer intervenor: "the defendant's previous conduct is wrong only in the sense that it is a wrong to society at large. It may be a moral wrong and may be punishable on behalf of the public; but it is not a private legal wrong to individual members of the public, who of their own motion undertake to lessen the evil effects of the defendant's dereliction from duty." *Clark* v. *Railroad*, 78 N. H. 428, 430. And it holds as to one intervening under a public duty: "The chance of injury in doing such work is necessarily assumed by him. . . . There is in his contract [to render the service] no distinction as to how the fires originated. . . . This [the contract] is merely an undertaking of one not otherwise related to the

situation, to bear for the defendant the consequences of its fault. . . . The agreement is like any insurance contract, and its validity is not open to question." *Ib.*, 432.

It thus appears that while, as already noted, there are jurisdictions where it is the law that one may recover when he goes from safety into danger to save the lives or property of others, at least if not found negligent in so doing, the *Clark* case shows that such is not the law here in force, even where there is a legal duty so to act.

It is said in the *Clark* case (*p.* 430): "The situation is much like that of the landowner and a licensee," and the plaintiff contends that the cases in other jurisdictions holding a landowner liable only on the basis of a licensor to a fireman hurt while fighting a fire on his premises reach their result from a conflicting but predominating rule incident to real estate in the landowner's protection, and that here the principle is not applicable since the decedent when killed was at other than the defendant's premises. But in the *Clark* case the plaintiff was injured by a fire on premises to which it had spread from the defendant's premises where the defendant had negligently started it. And the quotation from the opinion is not a proposition that the defendant stood as a licensor in right of the owner of the premises where the plaintiff was hurt, but is merely by way of illustration and comparison.

It is difficult to perceive how the landowner is entitled, by force of the law as to licensees, to protection from liability for defective conditions to a fireman, who enters his premises for the purpose of giving him protection. And there is much force in the reasoning in *Meiers* v. *Brewery*, 229 N. Y. 10, which holds that firemen are neither licensees nor invitees of the owner of the premises on whose property they are fighting the fire, their right of entry being given by law regardless of the owner's attitude about it. And it is held to be immaterial whether firemen go to a fire in response to an alarm given by the owner of the property on fire or by someone else. The owner's act in sending in the alarm does not make him an invitor in the legal sense, since it is not an invitation from him which is accepted, but a call to duty to which response is made. *Lunt* v. *Company*, 48 Col. 316.

For the principle that a landowner negligently setting a fire on his own premises is not liable to a fireman hurt in fighting the fire, authority is practically unanimous. The theory of most of the cases is that the fireman is a licensee, or stands in the position of a licensee, of the owner, who as licensor owes no duty to furnish safe conditions

of his premises. This theory produces an anomalous result. If an owner negligently starts on his premises a fire which spreads to another's premises where the fireman is hurt, the theory may not be invoked since the fireman does not enter the premises of the owner whose negligence starts the fire. But protection to the latter as a landowner by relief from liability would seem to be as much called for as for the landowner whose premises are entered. And when it is considered that the fireman enters for the landowner's benefit as an incident of the protection which the public gives, the legal situation under the license theory exempting him from liability but holding liable all others whose negligence starts the fire, is out of accord with the normal principle that the status of the injured party should not be controlled by the status of the wrongdoer. While the situation is brought about by a conflict between the law of real property and the law of torts, the latter rather than the former should prevail to avoid an arbitrary discrimination. It is not reasonable that the plaintiff's rights should depend upon such factors. And in arriving on other grounds at its result the *Clark* case produces consistency of justice, not only in cases where the fire is set by an owner of other premises than those where the fireman is injured, but also in cases where the fire is set by one not a landowner.

The opinion in the *Clark* case shows careful and thorough study and thought. No new considerations are now presented. The issue of duty to an intervenor acting either as a volunteer or under a public service was given full and chief attention, a rule contrary in part to that maintained was recognized to be in force in other jurisdictions, and the opinion was concurred in by a unanimous court. The suggestion in the opinion that any change in the law which the decision held to be in force here must be made by the legislature, has met with no action by any of five subsequent legislatures. The case was followed as to volunteer intervenors in *Croteau* v. *Company*, 79 N. H. 515, without dissent.

Most favorably for the plaintiff here, after extremely able presentation by her counsel of argument against the reasoning of the *Clark* case, the demands for the principles set forth in it to be declared erroneous are not convincing so as to warrant departure from the rule of *stare decisis*. At best the questions would be close and doubtful if they were not already settled, and under such conditions, to treat them as now arising *de novo* would be to defy the rule for following precedents. While the stability of the law does not require the continuance of recognized error, it does call for settlement of principle

and consistency of ruling when due consideration has been given and error is not clearly apparent. In the effort of the law to establish and enforce principles of reasonable justice, difficulties of application in individual cases are naturally encountered, and a borderland is found where the division line between duty and its absence, between recovery and its denial for harm done, is not readily subject to accurate survey. But a line established by a survey properly made is better than a shifting one. While the growth and development of the law means that it shall be elastic, it does not mean that it shall be fragile.

Respecting the claim that in any event the decedent did not assume the risk he encountered because it was not known to him, the *Clark* case does not hold that the fireman is entitled to no rights of protection at all while engaged in his work. "The nature and terms of the contract" he makes with the public are not such as to place him in a position wholly without legal relation to others. As said in the case (*p.* 432): "If his contract with the public created a relation to the individual member thereof, the relation created is such as the parties contemplated." It is contemplated that he shall fight all fires however caused and run the risk of injury from what may be expected to be encountered in so doing. But in reason it is not contemplated that he shall have no protection against dangers not fairly to be expected or not incidental to his work. Clearly he may recover for negligent intervention if injured thereby while engaged in his service. His contract implies no assumption of injury thus received.

Nor does the *Clark* case undertake to state the liability to entrants on private premises under public duty or service when they are hurt by defective or dangerous conditions other than those on account of which they make their entry. Under the license theory liability therefor is generally denied. It is not necessary here to decide it, and the reference made to *Meiers* v. *Brewery, supra,* is not intended to express any views as to the merits of the result there reached by a divided court in establishing such a liability.

If it may be said to be within the contemplation of his contract of service that a fireman fights a fire whatever the condition of the premises where his work takes him as well as however the fire is caused, and that he may fairly expect to meet incidental dangers of which he is in ignorance, it is not the situation here where the danger was in the lurking gas which was the subject of investigation. It was the hidden character of the danger itself, and not a danger in other conditions, with which the decedent's service brought him in contact.

Hazard of explosion and hazard from the situation in which it took place were not the same. The decedent's knowledge that escaped gas was a dangerous explosive did not include knowledge of the extraordinary danger which its possible presence in the duct furnished by reason of the manner in which the duct was closed. Such special danger might be a hidden and concealed one beyond expectation and converted the danger of which the risk was assumed into one which in a fair way it may be said the decedent did not bargain for in his contract of service.

The search for escaping gas naturally took the decedent to the place of peculiar and hidden danger. The defendant knew about it while the decedent did not. It had the duty of due care to warn him about it if it had reasonable opportunity to give warning after the danger existed, and due care called for warning if there was enough chance of danger to the decedent to prompt men of ordinary prudence in the defendant's place to warn him. Even if the truth be assumed of the testimony that at some time during the week previous to the explosion the defendant on investigation found no sign of gas in the ducts, it might be found that it had reason to expect that it might gather there as time went on with the continuous leak of gas from its pipes, and the test made was not necessarily one of reliance for the future. During all the time gas was escaping the chance of its entering the duct was one with which the defendant might reasonably be required to reckon, and in such reckoning was the chance that the decedent might search as he did and be hurt as he was. The defendant's superior knowledge of the chance of danger calling for warning to the decedent is a reasonable conclusion from the evidence, and as the decedent's contract included no assumption of an unknown extrahazardous character of the danger, the plaintiff was entitled to have the issue determined. While the burden of proof is on the plaintiff to show that the decedent did not assume the risk, the evidence permits such a finding. Extraordinary situations may be found to be unknown to those who are not shown to have been informed about them. "If the fact that the accident happened is not alone sufficient evidence of the injured party's want of knowledge of the existence of the defective appliance causing it, or of his exercise of due care (*Huntress* v. *Railroad*, 66 N. H. 185; *Gahagan* v. *Railroad*, 70 N. H. 441; *Waldron* v. *Railroad*, 71 N. H. 362), the manner of its occurrence, when that is in part disclosed by the evidence, may warrant an inference in his favor upon these points." *Murray* v. *Railroad*, 72 N. H. 32, 39.

The jury were instructed without regard to the decedent's status and the special relation in which the parties stood for that reason, the court charging: "The defendant owed to all those who might reasonably be expected to come in contact with its gas the duty to exercise due care . . . to prevent . . . damage." Since the defendant was liable only if it created, in addition to the general danger of escaped gas, a hidden and exceptional danger of which the decedent was entitled to warning, the error of the charge is apparent, and the error may have produced the verdict. The defendant requested an instruction that the decedent, if "endeavoring to locate gas to abate a possible injury to other persons or property," was "a volunteer in law and cannot recover." The request fairly called the court's attention to the limitation of general liability under the *Clark* case as herein set forth, and although the defendant was not entitled to have the requested instruction given in the form in which it was presented, it was entitled to have correct instructions on the subject given, and its exception to the denial of the request saved its rights. *Burke* v. *Railroad*, 82 N. H. 350, 361–363.

There were exceptions to evidence. One related to the talk of a witness with the decedent prior to the explosion about the gas. After it was held competent as showing what information the decedent had, no evidence was offered to show what information was given. As the result of what was told him, the decedent asked the witness to tell the janitor of the building where the explosion occurred to let the decedent know when he arrived there. The request was not a statement of any fact, and the testimony about it is not within the hearsay rule. It was admissible as an incident in the decedent's course of conduct tending to prove that he made an investigation in the performance of his public duty and for that reason had the right to enter the building.

Testimony that after the explosion the defendant at once put on a crew of five men to locate and repair the leaks in its pipes was excepted to. The plaintiff claims the testimony was proper as tending to show the condition of the pipes and that the defendant had men available to do the work before the explosion. Obviously the fact that a number of men were set to work had nothing to do with the conditions found. And as it had already appeared that no repairmen had been working elsewhere on the day of the explosion which occurred in the evening, evidence that they worked after the explosion became substantially immaterial for the purpose of showing prior availability. Evidence of subsequent repairs not being competent to show

negligence, it should not be used for other purposes incidentally in issue unless the reasons therefor are counterbalancing. Such evidence is comparable with that of liability insurance, which, while it "may incidentally and unavoidably appear," "should not be permitted on slight grounds or for specious reasons," "and its introduction, even incidentally, should be avoided whenever it is practicable to do so." *Piechuck* v. *Magusiak*, 82 N. H. 429, 431.

In connection with this exception the defendant excepted to the refusal to charge that the subsequent repairs were not to be considered as evidence of negligence. The defendant was entitled to the instruction. The request fairly meant direct rather than indirect evidence of negligence and that the fact of subsequent repairs should not be treated as an admission of blame. It was the defendant's duty to repair the leaks, whether or not it was in fault for them, and aside from the ground of policy on which such evidence is excluded, here the performance of duty had no tendency to acknowledge blame. The evidence was admitted generally, and if it had been proper for any other purpose, it should have been excluded from use for the purpose to which the request referred.

The defendant paid the city its expense for repairing the damage to its property from the explosion. The admission of evidence about it involved a finding by the court that the payment was to discharge a liability rather than to compromise a doubtful or disputed claim. If the court's finding was not a necessary one, it was at least warranted. And the charge made it clear that the evidence was useful as an admission only of fault for the leaks, and not of liability to the plaintiff. Evidence of the amount of the payment was of bearing on the force and seriousness of the admission.

The trial court had discretionary power to receive the evidence that no warning of the danger was given the janitor. General indifference and inattention to the danger tended to show how the decedent was treated. *Proctor* v. *Company*, 70 N. H. 3; *Curtice* v. *Dixon*, 74 N. H. 386, 394; *Fuller* v. *Railroad*, 78 N. H. 366, 368, 369.

Exception was taken to the denial of numerous requests for instructions. So far as decision on their merits seems advisable, the opinion considers or relates to them. The exceptions to argument are not passed upon. *Stocker* v. *Railroad, ante,* 401.

*New trial.*

Snow, J., did not sit: the others concurred.

ON REHEARING. After the foregoing opinion was filed the defendant moved for a rehearing.

*Hughes & Burns*, for the motion.

*Conrad E. Snow*, opposed.

ALLEN, J. In its motion the defendant claims an absence of evidence to show that the decedent made his investigation and was in the building at the time of the explosion as a requirement of his duty as fire chief, and that it therefore had no duty to anticipate his presence there.

Those whose presence might be required in due care to have been anticipated included the decedent as to concealed dangers of an extra-hazardous nature. His presence might be found to have been reasonable and rightful, and so to have been thus anticipated.

Regardless of any duty, prescribed or otherwise, to investigate, as a fire chief in a city of the state he entered the basement of the building to ascertain if gas was escaping into it. It was an act in the course of his service such as might reasonably and naturally be expected under the conditions which existed and of which the defendant had knowledge. An obligatory character of his act was not essential to a reasonable foresight of his presence. It was enough if he acted officially rather than personally, and that he did so is not open to doubt. His prescribed duties were not necessarily the full measure of his service, which from the nature of his office and in the absence of defined limitation was inclusive of some conduct of discretionary authority. The prescription of official duties by statute or ordinance is not an exclusive test of authority when neither express provision nor implication from the nature of the office calls for it. A fire chief's service includes all legal conduct deemed by him calculated to promote the public safety in respect to the fire hazard. Exercise of such authority is within the scope of service and within his official power, although failure to exercise it may not be a breach of duty. The conduct was a part of the service and more than incidental to it.

And the decedent's presence in the building may be found to have been rightful. It is reasonable to say that it is within the implied authority of the janitor of a building, having the duties of care and protection, to admit a fire chief into it to make such an investigation as was here made. Consent of the owner through the janitor might therefore be found, and the consequent status of the decedent as at

least that of a licensee. Especially is this so in the absence of opposing evidence.

The evidence justified a conclusion that his presence was rightful, and as it was also in the course of his official service, the conclusion that his presence should have been anticipated was not unwarranted.

The other grounds of the motion call for no statement of consideration.

*Former result affirmed.*

SNOW, J., did not sit: the others concurred.