Angelina NASTASIO, Appellant,

v.

Barney CINNAMON, Molly Cinnamon, Philip Cinnamon, Jennie Cinnamon, Dave Gastman and Irma Gastman, Respondents.

No. 45390.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Ben W. Swofford, Robert A. Schroeder, John C. Milholland, Kansas City, Swofford, Schroeder & Shankland, Kansas City, of counsel, for appellant, Angelina Nastasio.

David R. Hardy, Lane D. Bauer, Sebree,. Shook, Hardy & Ottman, Kansas City, A. J. Granoff, Kansas City, George V. Aylward, Kansas City, for respondents.

COIL, Commissioner.

Appellant Angelina Nastasio, plaintiff below, has appealed from a judgment dismissing plaintiff's first amended petition after the trial court had sustained defendants' motion to dismiss on the ground that the petition failed to state a claim upon which relief could be granted.

Plaintiff, as the widow of Don Nastasio, sought $15,000 damages for her husband's wrongful death. Her first amended petition averred: that defendants were the owners and operators of a 4-story building in Kansas City, in which were located retail business establishments on the first floor and apartments and rooms on the upper three floors in which many different families resided; that the hallways, stairways, and entrances were used in common by the tenants and their invitees and were under defendants' exclusive control; that on April 1, 1953, a fire occurred in the building in which the safety of many of the tenants was imperiled and in which other tenants were injured and died, and that such imperilment, injury, and death were the direct result of the negligence of defendants in the several particulars specifically averred in the petition; that defendants' agent telephoned a fire alarm to the Kansas City Fire Department which responded thereto, "and that at the time of said alarm plaintiff's husband, Don Nastasio, deceased, responded to the scene of said fire as a volunteer and proceeded to go upon said premises for the primary purpose of saving life and limb of the tenants" who were in imminent peril as a direct result of the negligence of defendants, and that while engaged in res-

·cuing such imminently imperiled persons ·the porches of said building were caused and permitted to collapse and fall upon plaintiff's husband directly causing his ·death; that such porches were and had been for a long time to the knowledge of defendants in a dangerous, unsafe, and structurally weakened condition "amounting to a trap for persons using them" and that defendants were wantonly and grossly negligent in ·causing and permitting such porches to remain and exist in such condition; that one of the defendants, present at the scene of the rescue operation, saw plaintiff's deceased husband under one of said porches ·but failed and refused to inform said deceased of the imminent danger of the porch's ·collapse and was thereby grossly and wantonly negligent.

It will be noted from the above summary of the amended petition that plaintiff averred that her husband as a result of the alarm responded to the scene of the fire as a "volunteer." Defendants' brief contains a statement to the effect that at the time plaintiff's deceased *volunteered* to rescue imminently imperiled tenants, he was an off-duty city fireman. Plaintiff correctly asserts that defendants in making that statement went "outside the record." Plaintiff, however, in her reply brief admits that the statement is true. Consequently, we shall consider the sufficiency of plaintiff's petition as though it included the substance of that statement. It would be useless and time-consuming for us on this review to consider the petition as though the conceded fact as to plaintiff's deceased's status were not in the petition and as a result remand the case, when plaintiff agrees that the omitted fact is true, and when such omitted fact is, in our view, decisive of our disposition of the case. We therefore insert the omitted fact in brackets in the appropriate portion of the petition. So doing, the petition avers in part, "defendants' resident manager personally telephoned the fire alarm call to the Kansas City, Missouri Fire Department which responded thereto; and that at the time of said alarm plaintiff's husband, Don Nastasio, deceased [who was a fireman employed by the Kansas City Fire Department and who was then off duty], responded to the scene of said fire as a volunteer and proceeded to go upon said premises for the primary purpose of saving life and limb of the tenants so imperiled * * *."

In our recent case of Anderson v. Cinnamon, Mo., 282 S.W.2d 445, 446 (involving the same fire as the one here in question), it was held that a member of the Kansas City Fire Department, who entered premises to perform his duties as a fireman, had the status of a licensee; that " 'defendants' negligence in failing to repair said porch and put the same in a reasonably safe condition' cannot be a basis of liability to plaintiff"; and that "where it is not alleged that the possessor of land was informed that firemen intended to enter and use the porch of his building with their fire-fighting equipment before they went on it, he cannot be held liable for failure to warn them to leave it after he knew of their presence there." 282 S.W.2d 450.

It is plaintiff's contention that the instant amended petition stated a claim for relief under the "rescue doctrine" and because of the fact that plaintiff's decedent was an invitee. Thus, plaintiff claims that Anderson v. Cinnamon, supra, does not control the question presented in the instant case because Anderson v. Cinnamon did not deal with a petition purporting to state a claim for relief under the "rescue doctrine" or a claim for relief based upon a possessor's duty to an invitee. The same reasons, hereinafter stated, which cause us to hold that the amended petition fails to state a claim for relief under the "rescue doctrine" cause us also to hold that plaintiff's deceased's status under the law of Anderson v. Cinnamon was that of licensee and not that of invitee.

The parties in their briefs disagree on the legal principles involved in, and the scope of, the so-called "rescue doctrine." It is plaintiff's contention that the doctrine en-

compasses the proposition that one who, absent wantonness, goes to the rescue of one imperiled by the negligence of another and is injured may recover against the other on the theory that the negligence toward the imperiled victim was likewise proximate negligence causing the injury to the rescuer. Defendants contend that the "rescue doctrine" "concerns itself entirely with the question of contributory negligence" and that in any event the "rescue doctrine" cannot apply to the facts stated in plaintiff's amended petition because "the alleged negligence of defendants which imperiled the tenants was not the proximate cause of plaintiff's decedent's death." The view we take makes it unnecessary for us to precisely define the "rescue doctrine," although we may observe that we are not impressed by defendants' contentions as to its scope. For our purposes, we shall assume that plaintiff's contention as to the scope of the doctrine is correct. Therefore, it may be conceded that the same negligence which imperils a victim is also proximate negligence as to the nonwanton rescuer.

 We are of the opinion, however, that plaintiff has failed to state a claim for relief under the "rescue doctrine." That conclusion for these reasons. We again note that, for our purposes, it is averred that plaintiff's decedent was an off-duty fireman, employed by the Kansas City Fire Department, who responded to a fire alarm. He is characterized in the petition as a "volunteer." The averment, however, that he was an off-duty Kansas City fireman qualifies and limits the meaning which can be ascribed to his description as a "volunteer". As we see it, a regularly employed fireman of the Kansas City Fire Department, established and maintained under Kansas City's charter power "To provide and maintain a fire department and to establish regulations for the prevention and extinguishment of fires", Section 1(22), Kansas City Charter (of which we take judicial notice), may, when off duty, be a *volunteer* in so far as concerns his relation with the fire department, i. e., his employer; but once having volunteered to respond and having responded to a fire alarm as a member of the Kansas City Fire Department, he occupies a status, from the time he begins his duties in response to that alarm, exactly the same as an on-duty fireman, in so far as concerns his relationship to the public while fighting the fire. Thus, the fact that he volunteered to perform his duties at a time when he was off duty might affect relationships between him and his employer. For example, he might be entitled to overtime pay or, if he were under workmen's compensation, his volunteer status would not bar him from compensation for injuries received in the course of his employment. Volunteering, however, in the sense that he agreed with his employer to perform his duties as a fireman at a time when he was off duty, does not make him a *volunteer* or make his action voluntary at the scene of the fire in so far as concerned the acts he performed in fighting the fire and in saving property and life.

 A fireman has been defined as one "whose duty is to extinguish fires and to protect property and life therefrom." Behr v. Soth, 170 Minn. 278, 280, 212 N.W. 461, 462. We think that general definition describes accurately the broad duties of a fireman according to the common knowledge of the public. It follows that plaintiff's decedent's acts of "rescue" at the fire in question were performed as a result of his duty as a duly employed fireman under the supervision of his superiors in the Kansas City Fire Department. Now, the "rescue doctrine" under any conception of it contemplates a voluntary act by a rescuer who in an emergency attempts a "rescue" prompted by a spontaneous, humane motive to save human life, and which "rescue" the rescuer had no duty to attempt in the sense of a legal obligation or in the sense of a duty fastened on him by virtue of his employment. A "rescue doctrine" case frequently referred to and quoted is Wagner v. International Ry. Co., 232 N.Y. 176, 133 N.E.

437, at page 438, 19 A.L.R. 1, wherein it was said: "The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. * * * It is enough that the act, whether impulsive or deliberate, is the child of the occasion." It seems clear to us that instant deceased's action, whatever it was, directed toward rescuing people or preventing the loss of human life was not the "child of the occasion." On the contrary, it seems equally clear that deceased was brought into contact with the emergency situation created by the fire solely by reason of his status as a member of the Kansas City Fire Department and that the injuries he sustained occurred while he was performing the duties which he was employed to perform. In other words, to "rescue" persons imperiled by fire was his business; he had no choice whether to take "the risk of rescue" —his duty to his employer and to the public required it. It seems, therefore, that plaintiff's decedent's actions at the fire could not have been such as to bring him within the scope of the "rescue doctrine." We so hold.

■■ It follows from what we have said that plaintiff's decedent's status on defendants' premises was the same as that of an on-duty fireman. Consequently, his status, under the rule of Anderson v. Cinnamon, supra, was that of licensee. Inasmuch as there is no allegation in plaintiff's instant petition that the defendants knew that plaintiff's decedent intended to enter the premises and be under the porch before he went onto the premises, defendants cannot be held liable for failure to have warned plaintiff's decedent to leave his position under the porch after defendants knew of his presence there. Anderson v. Cinnamon, supra, 282 S.W.2d 450, 451.

The judgment of the trial court dismissing plaintiff's petition is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur except WESTHUES, J., who dissents.

WESTHUES, Judge (dissenting).

The principal opinion in this case follows the ruling made in a companion case, Anderson v. Cinnamon, 282 S.W.2d 445, decided by this court en banc in September, 1955. I have no fault to find with the portion of the opinion which holds that Don Nastasio, who lost his life, was at the time acting as a fireman and not as a volunteer in the discharge of a rescue mission. In Anderson v. Cinnamon, supra, this writer prepared a short dissenting opinion. The only purpose of my dissent in the present case is to point out more specifically my reasons for dissenting. The majority of the court has ruled and I do not wish to, and should not, continue to dissent. I shall not do so in the future but I have a hope that some day a majority of the court may reclassify the status of a fireman.

I am not convinced that a fireman should be classified as a licensee. The shoe does not fit. In case of a fire, the owner of the property, unless he is an arsonist, welcomes no one more than he does the firemen. The fact that it is the duty of the firemen to go upon the premises to fight the fire does not make them less welcome. As to the status of firemen, whether they are invitees or licensees, see Shypulski v. Waldorf Paper Products Co., 232 Minn. 394, 45 N.W.2d 549, loc. cit. 551(2). The case holds firemen do not belong, strictly speaking, to either class but are *sui generis*.

It is not my opinion that an owner of property should be liable in damages to a fireman when injured by encountering the usual risks in performing his duties. But I am of the opinion that an owner of property should be held liable to a fireman injured as a result of an unusual, hidden dan-

ger of which the owner had knowledge coupled with the opportunity to warn. In the Anderson case, 282 S.W.2d loc. cit. 447, 448(3, 4), this court held that even to licensees, the owner owes a duty to warn of the existence of an unusual hazard. Note what the court said: "Thus it is unusual hazard that requires warning to licensees. Harmful chemicals, explosives and other inherently dangerous materials developed by modern science and industry, no doubt, would be within this rule at least under circumstances where licensees could not be expected to know of their presence or effect."

Is not a porch at the third floor of a building which is so defective that it would not bear the weight of a man, an unusual hazard? The petition in this case and in the Anderson case stated that the owner had knowledge of the defective condition of the porch and that he was present on the premises at the time of the fire; that he had the opportunity to give timely warning and failed to do so.

I am of the opinion that whether the defective porch was or was not an unusual hazard was a question of fact for a jury. And so was the question of whether the owner could have given timely warning a question for a jury.

In the Shypulski case, 45 N.W.2d loc. cit. 553, the court said, "Certainly, no meritorious reason can be advanced to justify the view that a property owner, with knowledge of a hidden peril, should be allowed to stand by in silence when a word of warning might save firemen from needless peril. The burden of a duty to warn of hidden perils falls lightly upon the landowner in comparison with the cost of his silence, which is frequently measured in the lives and limbs of firemen and in the sorrow and suffering of their families. Although firemen assume the usual risks incident to their entry upon premises made dangerous by the destructive effect of fire, there is no valid reason why they should be required to assume the extraordinary risk of hidden perils of which they might easily be warned. Two courts at least have held that firemen do not assume such risks, and, for the reasons already stated, we regard that holding as sound. Smith v. Twin State G. & E. Co., 83 N.H. 439, 144 A. 57, 61 A.L.R. 1015; Campbell v. Pure Oil Co., 194 A. 873, 15 N.J.Misc. 723."

For the reasons stated above, I respectfully dissent.