RUTH E. JONES, as Administratrix of the Estate of FRANK E. JONES, Deceased, Respondent, *v.* VERNA M. GRAY, as Administratrix of the Estate of SAMUEL M. GRAY, Deceased, Appellant. (Action No. 1.)

MYRTIS E. PLOSS, as Limited Administratrix of the Estate of EDWARD PLOSS, Deceased, Respondent, *v.* VERNA M. GRAY, as Administratrix of the Estate of SAMUEL M. GRAY, Deceased, Appellant. (Action No. 2.)

MABEL A. TONE, as Administratrix of the Estate of FRANK L. TONE, Deceased, Respondent, *v.* VERNA M. GRAY, as Administratrix of the Estate of SAMUEL M. GRAY, Deceased, Appellant, et al., Defendants. (Action No. 3.)

Third Department, December 28, 1943.

*Andrew J. Cook,* attorney (*Francis T. Murray* of counsel), for appellant.

*N. LeVan Haver,* attorney for plaintiffs-respondents Ruth E. Jones and Myrtis E. Ploss.

*Augustine M. Devaney,* attorney for plaintiff-respondent Mabel A. Tone.

HEFFERNAN, J. On October 22, 1942, during a practice blackout held in Ulster County, New York, Samuel M. Gray, a resident of and an air raid warden in the town of Hurley, Ulster County, and Frank E. Jones, a resident of and an air raid warden in the town of Olive in the same county, were driving their respective automobiles in opposite directions on a public highway, leading from Kingston to Ashokan. A head-on collision occurred between the two vehicles as a result of which both drivers were killed. Frank Leslie Tone who was a passenger in the Gray car and Edward Ploss who was a passenger in the Jones car also lost their lives in the same accident. Three other passengers in the Gray car survived.

Thereafter the representatives of Jones, Ploss and Tone instituted separate actions to recover damages against the representatives of Gray on the theory that the latter's negligence caused the fatalities. Later these actions were consolidated, tried together and resulted in judgments in favor of plaintiffs from which defendant has appealed.

In each case defendant's answer consists of a general denial, a plea of contributory negligence together with an affirmative defense to the effect that she is immune from liability to each plaintiff under and by virtue of subdivision 1 of section 40 and subdivision 11 of section 2 of the New York State War Emergency Act, being chapter 445 of the Laws of 1942 (as amd. by L. 1942, ch. 544), the pertinent provisions of which are: " Neither the state nor any municipality thereof, nor their agencies, agents or representatives, nor any member of a municipal or volunteer agency, nor any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, in good faith carrying out, complying with or attempting to comply with any law or duly promulgated rule, regulation or order as defined in subdivision eleven of section two of this act or any federal law or any order issued by federal or state military authorities relating to civilian protection, shall be liable for any injury or death to persons or damage to property as the result of such activity."

" ' Duly promulgated rule, regulation or order ' shall mean any rule or order adopted or issued by the state council or by a local council, or any regulation or order adopted or issued by the state director or by a local director pursuant to law."

Defendant asserts that at the time mentioned in the complaint her intestate was engaged in good faith in complying with or attempting to comply with the quoted provisions of the Act.

At the commencement of the trial the attorneys for the plaintiffs applied to the court for an order striking out the affirmative defense on the ground that the immunity statute relied on is unconstitutional, being in contravention of article I, section 16, of the State Constitution. By consent of counsel for all parties the court reserved its decision on this motion " until after the jury has rendered its verdicts."

At the close of the evidence defendant moved for a directed verdict in her favor and likewise made the usual motions to dismiss the complaints for insufficiency of proof, and also on the ground that plaintiffs' intestates were guilty of contributory negligence as a matter of law. Plaintiffs also renewed their motion to strike out the affirmative defense. Again, by consent of the parties, the court reserved its ruling on the various motions pending the rendition of the jury's verdicts. In submitting the cause to the jury the court directed it to answer the following special question: " Was the defendant's intestate, Samuel M. Gray, operating his automobile at the time of the collision, as an air raid warden, in good faith, carrying out, complying with or attempting to comply with any law or duly promulgated rule, regulation or order, as defined in subdivision 11 of Section 2 of the New York State War Emergency Act, or any Federal Law, or any order issued by Federal or State Military authorities, relating to civilian protection?"

The court also directed the jury to render general verdicts.

The jury unanimously answered the special question in the negative and found general verdicts for plaintiffs. Thereafter the court denied defendant's motions. In respect to plaintiffs' motion it said: " The plaintiffs' motion to strike out the affirmative defense is now academic and is not decided." The constitutionality of the immunity statute is, therefore, not presented to us.

Defendant on this appeal contends that the judgments should be reversed on but two grounds: (1) That as a matter of law her intestate, at the time of the accident, was in good faith performing his duties as an air raid warden; and (2) that plaintiffs' intestates were guilty of contributory negligence as a matter of law.

The second ground upon which defendant seeks to strike down the judgments can be disposed of readily. Whether or not plaintiffs' intestates were negligent presents only a question of fact. From our examination of the record the conclusion is inescapable that the verdicts in that respect are amply supported by the evidence.

Was Gray acting in good faith as an air raid warden on the occasion in question? The jury found that he was not. The duty is cast upon us to examine the record in order to ascertain if that finding is supported by proof.

The record discloses that about 7:36 P. M. on the night of the tragedy Mrs. O'Brien, the wife of the chief air raid warden in the town of Hurley received notice of the impending blackout. She immediately telephoned to the Ostrander store located in the hamlet of Ashokan in an attempt to locate Gray in order to have him report at Glenford, which was his air raid post. The telephone call was answered by Ostrander's fifteen-year-old daughter. Gray who was in the store when the call came refused to take the message and instructed her to say that he had left, which she did. Mrs. O'Brien then requested Miss Ostrander to notify Gray, in the event of the latter's return, that there was a blackout and that he should report at Glenford. This message was immediately communicated to Gray, substantially one half hour before the accident.

Following his receipt of the warning signal Gray, instead of proceeding immediately to his post, loitered in the store for about a quarter of an hour during which time Miss Ostrander and a young man named Secor drove to the home of another young woman, Miss DuBois, to bring her to the store for the blackout. After the return of the young people Gray invited them to accompany him to witness " a real blackout." The invitation was accepted. Gray also asked Tone, an elderly man, to accompany them with the assurance that he would be driven to his home in West Hurley. Unfortunately for him he likewise accepted the invitation.

The jury was justified in finding that Gray delayed in appearing at his air raid post in order that the two couples might assemble preparatory to starting on " a real blackout " party.

The collision occurred about seven tenths of a mile from the Ostrander store. There is evidence from which the jury might well conclude that the Gray car was then travelling down grade, on the wrong side of the road, without lights, at a rate of speed of from forty-five to fifty miles an hour and that the Jones car, with its lights on, was proceeding upgrade in second gear at a rate of speed of not to exceed twenty miles an hour.

Instead of restricting his speed to fifteen miles an hour during a blackout, as required by the regulations with the enforcement of which he was charged, Gray was utterly ignoring them by travelling at an excessive rate of speed and operating his car in a dangerous and reckless manner so that he became a menace to all persons on the highway.

The evidence is quite convincing that there were no lights on the Gray car from the time it started until the collision. Vehicles that are permitted to proceed during a blackout are required to have some lights on " to warn approaching vehicles of the presence of another vehicle."

The important question for the jury to determine in this case was whether or not Gray was acting in good faith. Obviously that was a question of fact for the jury. It seems to us that there is ample evidence to support the jury's finding that Gray was not acting in good faith in performing or in attempting to perform his duties as an air raid warden at the time of the collision. Defendant's contention that her intestate's good faith and honest intention must be conclusively presumed as a matter of law from the single fact alone that at the time of the collision he was proceeding in the general direction of his air raid post, and irrespective of all the other evidence as to his conduct prior to that time, is without merit.

The judgment and order appealed from should be affirmed, with costs.

All concur.

Judgment and order appealed from affirmed, with one bill of costs to be divided among the plaintiffs, and with printing disbursements to each plaintiff. [See *post,* p. 926.]