## SMITH et al. v. TOWN OF ORANGETOWN et al.

District Court, S. D. New York.
Sept. 15, 1944.

Samuel L. Sargent, of New York City (Emanuel Thebner and Joseph H. Sand, both of New York City, of counsel), for plaintiffs.

William E. Lowther, of New York City, for defendant Town of Orangetown.

Evans, Rees & Orr, of New York City (William E. Lowther, of New York City, John E. Mack and Joseph A. McCabe, both of Poughkeepsie, N. Y., and Fred H. Rees and William G. Walsh, both of New York City, of counsel), for defendant Max Friedman.

MOSCOWITZ, District Judge.

At the close of the trial, resulting in a verdict for the defendants, plaintiffs moved to set aside the verdict and for a new trial on the usual grounds, namely, that the verdict was contrary to the law, contrary to the evidence and contrary to the weight of the evidence. At that time the Court stated that a brief would be received solely upon its refusal to charge plaintiffs' requests numbered 11, 12 and 13, but counsel for the plaintiffs have urged new and additional questions in their brief.

The action was one to recover damages arising out of an accident which occurred on November 22, 1943 at about 9 p. m. The defendant, Max Friedman, a police officer employed by the defendant, Town of Orangetown, while operating his automobile, struck and killed Charles Lee Smith, a soldier, and injured five other soldiers. These six, with others in a battalion, were marching under orders of their colonel on the easterly side of Route 9W, a public highway in Rockland County, New York, in the same direction as traffic proceeded on that side of the road.

Section 85 of the Vehicle and Traffic Law of the State of New York, Consol.Laws, c. 71, provides that pedestrians shall walk to the left of the center of the highway, that is, against traffic. Ordinarily, if a pedestrian walked on the "wrong" side of the thoroughfare in violation of this statute, that fact could be considered by a jury on the question of his contributory negligence. However, when soldiers are marching under orders, they have no alternative but to obey the commands of their superiors, and the fact that they march on the "wrong" side of the road cannot be considered as contributory negligence on their part and is not an issue in this case.

It was part of Friedman's war-time duty as a police officer that he should keep himself under 24-hour readiness to respond to summons for blackout calls and to report without delay to police headquarters at Spark Hill. At 9:20 of the evening in question, while Friedman was in a drugstore at Nyack, and without previous no-

54

tice to him, a siren sounded what is called the blue signal. It thereupon became his obligation, under the rules and regulations promulgated for blackouts, to report at Spark Hill, which was only a few miles away, as soon as possible. Friedman immediately left the drugstore, got into his car and proceeded toward this destination, intending to report for duty. The unfortunate collision with the soldiers occurred on the way about ten minutes later.

Section 40 of the New York State War Emergency Act, Laws 1942, c. 445, re-enacted by Laws 1942, c. 544, effective from May 1, 1942 to July 1, 1945, provides as follows:

"§ 40. Immunity from liability.

"1. Neither the state nor any municipality thereof, nor their agencies, agents or representatives, nor any member of a municipal or volunteer agency, nor any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, in good faith carrying out, complying with or attempting to comply with any law or duly promulgated rule, regulation or order as defined in subdivision eleven of section two of this act or any federal law or any order issued by federal or state military authorities relating to civilian protection, shall be liable for any injury or death to persons or damage to property as the result of such activity."

It is conceded that Friedman's duty to report to headquarters was pursuant to the requirements of a "duly promulgated rule, regulation or order" as defined in Section 2, subd. 11 of the Act.

█ It is the contention of plaintiffs that this statute does not absolve those within its purview from negligence. What plaintiffs would advance as the purpose of its enactment is not made known. Common sense bares the fallacy of that argument. Under plaintiffs' construction, the statute would be futile and meaningless, since entirely aside from Section 40, there would be no liability on the part of defendants unless Friedman was first found to have been negligent.

As a matter of fact, there was no evidence whatever of negligence produced upon the trial and this Court would have been compelled to set aside a verdict for the plaintiffs if the jury had returned such. The Court refused to charge the three requests in the language proposed [1] for the reason that their substance had been adequately covered in the main charge in which the Court explicitly instructed the jury that they had to determine two questions: firstly, whether Friedman had acted negligently,[2] and secondly, in the event that they found negligence, whether he had been pursuing his duties in good faith at the time of the accident.

[1] The language of the requests which the Court refused to charge is as follows:

"XI. Nothing contained in the said Act granted to the defendants the right and privilege to operate a motor vehicle without regard to speed and without regard for the safety of persons who were upon the highway, or in a dangerous, reckless or wanton manner.

"XII. Nothing contained in the direction to the defendant Friedman to report promptly to Police Headquarters in Sparkhill granted to him the right and privilege to operate a motor vehicle without regard to speed and without regard for the safety of persons who were upon the highway, or in a dangerous, reckless or wanton manner.

"XIII. Nothing contained in the said Act or said direction granted to the defendant Friedman the right to operate a motor vehicle at a rate of speed in excess of that which is reasonable and proper under conditions prevailing at such time."

[2] The following are some excerpts from the Court's charge indicating that the question of negligence was expressly left to the jury:

(S.M. p. 6) "There is a serious dispute whether Friedman was guilty of negligence. The plaintiffs contend that he was; the defendants say that he was not. The plaintiffs say that he did not exercise reasonable care under the circumstances. Failure to exercise reasonable care under the circumstances of the particular case—the care and caution that a reasonably prudent person would exercise—would be negligence.

"Now, necessarily, one may be negligent in one circumstance and not negligent in another. For example, if one should drive in a congested place, a congested street—say Broadway and 42nd Street—sometimes going 15 miles an hour might be negligent, or even at a lesser speed. On the other hand, if you are on an open highway going at a greater speed, you might not be negligent.

"You see, the jury's duty is to determine whether it was negligence under the circumstances, not in another case but in this case and none other. You see, that is an issue peculiarly for the jury to determine."

(S.M. p. 14) "The fact that he was driving his automobile would not relieve the

Section 40 is captioned "Immunity from liability" and its terms evidence its purpose. To meet the pressing need for personnel to effectuate defense preparations at the time when the possibility of enemy air invasion was much more imminent than it fortunately is to-day, the Legislature adopted this statute. Individuals and municipalities had been reluctant to accept responsibility for injuries to persons or property which might accompany their execution of the functions assigned to them. To eliminate this impediment to expedient civilian protection, it was the considered consensus of the Legislature to declare that any one who was "in good faith" carrying out any duly assigned duties relating to civilian protection would not be liable for injuries or death which resulted therefrom (See 1942, Op.Atty.Gen. 312).

But the statute does not blanket with immunity all those who are administering any phase of civilian protection. The Legislature saw fit to limit the application of the new statute to those persons who are acting in good faith at the time the injury occurs. The case of Jones v. Gray, 267 App. Div. 242, 45 N.Y.S.2d 519, 522, strongly urged by plaintiffs as determinative of defendants' liability here, is clearly distinguishable in the absence of that qualification. There an air raid warden was also in a store a few miles distant from his post when he received notice of the blackout drill. Quotations from the Court's opinion illustrate the marked factual difference from the instant case.[3] Judge Mack, of counsel for one of the defendants here, aptly characterized the fatal journey in the Jones case as no more than a "joy-ride".

Of course, the existence of good faith is an issue for the jury to decide in any case and it was left to them in no uncertain terms here. At one point in the charge, the Court inadvertently stated that the burden of proof was upon plaintiffs to show an absence of good faith. When the Court's attention was drawn to this error by Judge Mack, who represented the defendant Town of Orangetown, it was immediately corrected and the jury was instructed that it was the law that the burden is upon the defendant under the statute to prove good faith. No exception was noted by the plaintiffs' attorneys and they were apparently satisfied with the manner in which the Court corrected its inadvertence at the time. Their raising of an objection in their brief was undoubtedly an afterthought.

■ It is evident from the facts recited in the opinion in the Jones case that the air raid warden was conducting himself in such a manner that there was sufficient evidence to support the jury's finding that he was not acting in good faith, which was the question submitted to them. See Gaglio v.

---

town of liability if he were acting in the performance of his duties and within the scope of his employment, if he were negligent.

"Now, the first question for you to concern yourselves with is that of negligence. Was the defendant Friedman negligent?"

(S.M. p. 15) "Was his negligence, if any, the competent producing cause of the accident?"

(S.M. p. 16) "Of course, if a person is exercising reasonable care and caution and should see the people on the wrong side of the road under the circumstances, and did see them, and ran into them without any fault on their part, that would be negligence. But that is a circumstance for your consideration, just as you consider that it was a dry night, that the roads were dry; it was a clear night, I believe."

3 "Following his receipt of the warning signal, Gray, instead of proceeding immediately to his post, loitered in the store for about a quarter of an hour during which time Miss Ostrander and a young man named Secor drove to the home of another young woman, Miss DuBois, to bring her to the store for the blackout.

After the return of the young people Gray invited them to accompany him to witness 'a real blackout'. The invitation was accepted. Gray also asked Tone, an elderly man, to accompany them with the assurance that he would be driven to his home in West Hurley. Unfortunately for him he likewise accepted the invitation.
* * *

"The important question for the jury to determine in this case was whether or not Gray was acting in good faith. Obviously that was a question of fact for the jury. It seems to us that there is ample evidence to support the jury's finding that Gray was not acting in good faith in performing or in attempting to perform his duties as an air raid warden at the time of the collision. Defendant's contention that her intestate's good faith and honest intention must be conclusively presumed as a matter of law from the single fact alone that at the time of the collision he was proceeding in the general direction of his air raid post, and irrespective of all the other evidence as to his conduct prior to that time, is without merit."

City of New York, 2 Cir., 143 F.2d 904. Since both the question of Friedman's negligence and of the existence of his good faith were submitted to the jury in the present case under a charge of some length and particularity thereon,[4] including representative definitions of what constitutes good faith,[5] by their verdict for the defendants it is clear that the jury either found no negligence or that they believed that Friedman was carrying out his duties in good faith. As heretofore stated, the conclusion reached was the only one justified by the evidence.

■■ The additional matters raised by plaintiffs' attorneys *in their brief are trivial in character and without substance and really merit no notice, especially since it was contemplated in the Court's direction that only the refusals to charge would be discussed. No exception to the charge or to any procedure was taken at the time of the trial, which disposes of most of the points presently urged for the first time. Plaintiffs' attorneys claim an alleged violation of Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides that opportunity shall be given to make objections out of the hearing of the jury to the giving or failure to give an instruction. It is obvious that the rights conferred by this rule may be waived and a glimpse at the colloquy which ensued upon the trial evidences that the attorney for plaintiffs acquiesced and thereby waived his privilege, if any.[6]

■ Plaintiffs' criticism that their adversary's mention in summation of other compensation possibly available to these soldiers, such as government insurance, loses significance in the light of the Court's strong charge to the jury that they must not be influenced by any possible alternative relief available to the plaintiffs.[7]

■ The plaintiffs suggest that Section 40 of the New York State War Emergency

---

[4] (S.M. p. 21) " * * * but the proof must be that Friedman was guilty of negligence and that also he was not acting in good faith in carrying out, complying with or attempting to comply with the law or duly promulgated rule, regulation or order requiring him to report. In other words, there can be no recovery here merely upon the ground of negligence unless you also find that Friedman is guilty of lack of good faith in the performance of his duty.

(S.M. p. 23) "Now, you have got to take the law from me and decide this case according to law. If you find that there was no negligence, that is the end of the case. If you find, even though there was negligence, that Friedman was acting in good faith in performing his duties, that would be the end of the case and your verdict would be for the defendants in each instance.

"If you find from the evidence here that the plaintiffs were free from contributory negligence, that the defendants were negligent and, in addition to being negligent did not act in good faith, then and then only would the plaintiffs be entitled to recover— would the plaintiffs be entitled to damages, and I will refer to that a little later on in this charge.

(S.M. pp. 24, 25) "So as I have said, you have got to determine whether Friedman was guilty of negligence and whether he was acting in good faith in the performance of his duty. If he was guilty of negligence and he was not acting in good faith and was performing duties within the scope of his employment and the plaintiffs were not guilty of contributory negligence, then the plaintiffs would be entitled to recover."

[5] (S.M. p. 22) "Generally speaking, good faith means being faithful to one's duty or obligation.

"In good faith means honesty, without fraud, collusion or deceit; really, actually, without pretense.

"Good faith is the opposite of fraud or bad faith.

"Good faith denotes honesty of purpose and is said to be a state of mind.

"Good faith is an honest intention to abstain from taking an unconscientious advantage of another; an honesty of intention."

[6] (S.M. p. 29) "Mr. Sargent: I am asking counsel—I think I ought to ask the Court—I think the rule says something about the absence of the jury in taking your exceptions. Am I right about that?

"Mr. Mack: I do not think so.

"Mr. Sargent: I am not sure about that, your Honor.

"The Court: If you want to do that, I will have to call them in and call attention to it. Whatever you want.

"Mr. Sargent: I don't want to inconvenience anybody, I just want to know what the general rule is. All right, Mr. Mack."

Nothing further was said on this matter.

[7] (S.M. p. 23) "You can't consider, on the other hand, that perhaps there might be some legislation paying these boys who were injured. You can't consider anything like that, because that would be guess, surmise and speculation. You can't consider

Act, if it does grant immunity from negligence, applies only after the red signal has sounded and all lights have been turned out. It is not strange that no authority for this absurd idea was offered.

The motion is in all respects denied. Settle order on notice.

that if they were disabled, if insurance had been taken out that they were going to get some insurance. You can't consider those things. That is all guess, surmise and speculation. You can not decide this case upon that.

(S.M. p. 32) "The Court: All right. The jury must disregard any reference made by defendants' counsel respecting the alleged claims of the plaintiffs against the government of the United States.

"I have already said that in substance. You are not to speculate as to whether the government should make provision for these men or whether these men have any insurance or anything of that kind. Don't base your decision upon guess, surmise or speculation. I have already covered that."