WALTER F. JENKINS et al., Appellants, *v.* 313–321 W. 37TH STREET CORPORATION, Appellant and Respondent, and NATIONAL TRANSPORTATION CORPORATION et al., Respondents, Impleaded with Another.

Argued November 26, 1940; decided December 31, 1940.

*Eli S. Silberfeld, T. J. Gillen* and *Edward M. Edenbaum* for plaintiffs, appellants.

*H. H. Brown* and *E. C. Sherwood* for defendant, appellant and respondent.

*Edward M. Fuller* and *Daniel Mungall* for respondents.

SEARS, J. The Appellate Division has reversed, two justices dissenting, a judgment in favor of the plaintiffs against the defendant, 313–321 W. 37th Street Corp., upon the law only and dismissed the complaint. In its order, the Appellate Division also unanimously affirmed the judgment dismissing the cross-complaint of the defendant against the impleaded defendants. Plaintiffs appeal from the judgment of reversal and dismissal of the complaint and defendant appeals from the part of the judgment which affirmed the judgment of the trial court dismissing the cross-complaint.

The plaintiffs are New York city firemen. On March 22, 1932, they responded to an alarm of fire in premises owned by defendant 313–321 W. 37th Street Corp. The fire started in the engine room of the sub-basement and to get there the firemen had to go down eighteen or twenty steps from the street level to the basement and thence down another stairway of six steps to the floor of the sub-basement. The floor of the sub-basement was seventeen feet below the sidewalk; it was below the sewer level. In the floor was a sump pit into which any liquid on the floor would drain. When the drainage reached a certain level in the pit which was three or four feet square and five or six feet deep, an automatic electric pump would drain it off from the bottom of the pit. Some drainage was, however, always left in the pit. The first fireman to reach the bottom of the second stairway noticed a strong odor of gasoline and saw flames dancing along the floor four or five feet away from

the sump pit. The fireman in charge ordered another to open the windows in the rear of the room. Before the order could be carried out, in fact, immediately after it was given, an explosion occurred and the room was aflame. The fireman who had given the order was killed; other firemen in the room were seriously injured, and those still on the stairway also received injuries, which, however, were less serious. The plaintiffs are firemen who were on the stairway and in the engine room when the explosion occurred.

The superintendent of the building testified on behalf of the plaintiffs. According to his testimony he was in the sub-basement when the fire started. He was about to remove the head of an empty steel barrel which had previously contained oil when an explosion occurred and water began to pour from the fire sprinklers. He was burned, and " scrambled " upstairs and entered a store on the ground floor of the building where his burns were being rubbed with oil when the firemen arrived. He also testified that he had seen no fire before the explosion. The origin of the fire and the exact cause of the first explosion are not otherwise explained in the record.

No gasoline was stored or used on defendant's premises. On the adjoining premises, owned or operated by the impleaded defendants, gasoline was stored and constantly in use. Tests made after the fire showed that gasoline was present in the soil of the adjoining premises, and that oily fluid was seeping into the sub-basement of defendant's premises and there accumulating in the sump pit, sometimes at the rate of three and four gallons a day, sometimes less. The condition seems to have been affected by the remnants of a rivulet which formerly flowed in the vicinity.

While the presence of gasoline in the quantity indicated would not, under ordinary circumstances, constitute an unusual hazard (*Flaherty* v. *Metro Stations, Inc.*, 202 App. Div. 583, 588), its presence in a closed room in which a fire was burning and where an explosion had occurred presented a situation on which the jury might predicate a finding of unusual hazard. If such a danger existed to

the knowledge of the defendant or its agent, the defendant was under a duty if it had opportunity to give warning of the peril. (*Meiers* v. *Koch Brewery*, 229 N. Y. 10; American Law Institute, Restatement of the Law of Torts, § 345.)

Before the trial defendant's superintendent signed and verified a statement that " * * * for a time previous to the fire and explosion there was a strong order of gasoline in the engine room and the floor of the sump pit was damp from the same. Upon notification to my superiors I was ordered to spread ashes to eliminate this condition this I did but the condition was never entirely eliminated and unfortunately a fire and explosion resulted in which * * * myself and many firemen were seriously injured." Upon the trial, as a witness for the plaintiffs, the superintendent denied the truth of the matter sworn to, but when confronted with his signed statement, admitted signing it after certain corrections had been made, at his suggestion, and swore that he signed it because it was true. Later, he again denied that there was any gasoline in the sub-basement. This affirmative proof, together with the undisputed fact that while the superintendent was in the sub-basement an explosion had occurred, warranted a finding by the jury that defendant or its agent in charge had notice of the unusual hazard into which the firemen unknowingly walked. Opportunity to warn the plaintiffs of the peril might be inferred by the jury from the fact that the superintendent was on the premises when the firemen arrived and knew of their arrival.

Defendant's liability was, therefore, under the circumstances presented by this record, a question of fact for the jury and, but for an error in the receipt of evidence, we would be constrained to reinstate the verdict. Plaintiffs called defendant's superintendent as their own witness. Not being content to impeach him by his signed statement alone, they sought to introduce oral contradictory statements made by the witness. Over objection and exception, these statements were received. The recent amendment to

the Civil Practice Act (§ 343-a; L. 1936, ch. 191, amd. L. 1937, ch. 307) permitting impeachment of one's own witness is in derogation of the common law and must be strictly construed. Such construction does not admit of the use of other than signed statements or statements under oath to impeach one's own witness.

With respect to the cross-complaint, there is in tnis record no evidence of negligence on the part of the impleaded defendants. Even if we infer from their use and storage of gasoline, that in some way they created the condition, there was a total absence of proof of negligence in respect thereto.

The judgment of the Appellate Division in so far as it dismisses the complaint should be reversed and a new trial granted, with costs to abide the event, and in so far as it affirms the judgment dismissing the cross-complaint affirmed, with costs. The motion to dismiss the appeal should be denied.

LOUGHRAN, RIPPEY, LEWIS and CONWAY, JJ., concur; LEHMAN, Ch. J., and FINCH, J., dissent and vote to affirm the judgment.

Judgment accordingly.