SAMUEL FIELD, Plaintiff, v. MANUFACTURERS TRUST COMPANY, Defendant.

Supreme Court, Trial Term, New York County, October 2, 1945.

*Walter F. Doyle* for plaintiff.

*Daniel R. Harvey, Archie R. Morrison* and *D. Miner* for defendant.

GAVAGAN, J. This is an action for damages for personal injuries tried before me. The trial began before a jury but near the close the jury was waived, as likewise were findings of fact and conclusions of law, and it was stipulated the court should consider the testimony as if taken from the inception before it without a jury. Decision was reserved on all motions save one not necessary to this decision to detail.

Plaintiff, a tenant of defendant's apartment house at 90 Riverside Drive, Borough of Manhattan, City of New York, while acting as an air raid warden with the knowledge and consent of defendant's superintendent, was on May 22, 1942, severely injured by falling through a space caused by the recession of a roof (upon which he was acting as an air raid warden). The recession was due to construction of the roof where part thereof set back from the wall producing an aperture of considerable width and depth. Through the opening plaintiff fell, sustaining the injuries for which recovery is sought. It should be noted the rest of the roof was flush with its sustaining walls.

The testimony established to my satisfaction that plaintiff on a prior occasion acted as an air raid warden with defendant's knowledge and consent, and was assigned to the roof in question by the defendant's superintendent and shown by him through which window to enter onto the roof; that the superintendent had actual knowledge of the peculiar construction of the roof and of its use and failed to warn plaintiff of the same. The superintendent very frankly admitted his knowledge and failure to warn, assuming the plaintiff could or would see for himself. I am also satisfied that the superintendent on the occasion in question assigned the plaintiff to the roof; that he closed

the window through which plaintiff entered onto the roof and proceeded with plaintiff's wife to the other window opening out into the recession in question and while there relayed information received from the air wardens on the roof concerning lighted apartments to the plaintiff's wife operating the switchboard, who in turn 'phoned the different tenants to extinguish their lights; that when total darkness was produced the superintendent instructed the air wardens on the roof to come on in and that plaintiff in obedience to the instruction, proceeded to the only open window through which a small light on the switchboard reflected onto the roof in the mistaken belief he was leaving the roof through the same window he entered; that he so proceeded across the roof to the edge thereof and was precipitated through the space to the bottom, sustaining undisputed severe injuries.

The plaintiff has sustained the burden of proof as to the negligence of the defendant, through its superintendent, and of his freedom from contributory negligence. Among the many defenses pleaded to resist the plaintiff's right to a recovery none, in fact or law, in my opinion, has any real merit, and I so decide. The only defense requiring consideration is the defendant's contention that plaintiff's right to recovery is barred by the provisions of section 40 of chapter 544 of the Laws of 1942, effective April 27, 1942 (New York State War Emergency Act), providing as follows:

" CHAPTER 544.

" AN ACT to amend the New York state war emergency act, generally

" Became a law April 27, 1942, with the approval of the Governor. Passed, three-fifths being present.

" *The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

" Section 1. Chapter four hundred forty-five of the laws of nineteen hundred forty-two, entitled ' An act establishing the New York state war counsel and providing emergency state and local governmental powers and agencies for civilian protection and for aiding the war effort,' is hereby amended to read as follows: * * *

" § 40. *Immunity from liability.* 1. Neither the state nor any municipality thereof, nor their agencies, agents or representatives, nor any member of a municipal or volunteer agency, nor any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, *in good faith carrying out,* complying with or attempting to comply with

any law or duly promulgated rule, *regulation or order* as defined *in subdivision eleven of section two* of this act or *any federal law* or any order issued by federal or state military authorities relating to civilian protection, shall be liable for any injury or death to persons or damage to property as the result of such activity.

" The foregoing shall not affect the right of any person to receive benefits to which he might otherwise be entitled under the workmen's compensation law, any pension law or the general municipal law, nor the right of any person to receive any benefits or compensation under any act of congress.

" 2. The provisions of section seventy-one of the general municipal law shall be inoperative and shall not apply with respect to property destroyed or injured by mobs or riots." (Italics mine.)

There is therefore presented for decision the query: Does the above-quoted section grant complete immunity to the defendant? Stated another way: Does the section grant defendant a complete shield against its own negligence whether that negligence be predicated upon a common-law or a statutory violation of duty where that negligence is not an incident or circumstance occasioned through air raid drills? I think not. The statute is in derogation of the common law and must be strictly construed (*Jenkins* v. *313–321 W. 37th St. Corp.*, 284 N. Y. 397).

The statute should not be given a tortuous or an illogical construction. It is an act of the Legislature and as such should receive an interpretation consonant with its intended purposes and designs. It was passed in contemplation of air raids and consequent disaster, chaos and confusion, and it is only sound logic that the Legislature intended immunity or protection to persons who " in good faith " were attempting to carry out orders, rules or regulations as promulgated or defined by the act itself. The act in clear and unequivocal language requires " good faith "; hence a blanket or total immunity was not granted, contemplated or declared. What then was the intendment of the Legislature? It knew of threatened air raids, for their immediacy was proclaimed by both army officers and governmental executives of such rank and authority as to demand consideration and respect. With those warnings in mind, the Legislature intended immunity to those who in " good faith " were carrying out air raid warnings and that protection should be granted them against any circumstances produced through either the instrumentalities used or through the very conditions produced by air raids or air drills. There was a duty resting upon the defendant to warn one using the roof with its knowl-

edge and consent, of a hidden hazard, trap or danger. This duty the Legislature did not abrogate. The common law required a defendant with knowledge of the use of the roof to warn those so engaged of a hidden hazard, danger or trap. (*Jenkins* v. *313–321 W. 37th St. Corp.*, 284 N. Y. 397, *supra; Rashid* v. *Weill*, 181 Misc. 815; *Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442; *Bradley* v. *New York Central R. R. Co.*, 62 N. Y. 99; *Racine* v. *Morris*, 201 N. Y. 240.)

The admitted failure of defendant to warn was not a good faith compliance with the act. The existence of the recession of the roof was not an incident or circumstance of air raids or air drills or practice. Plaintiff was on the roof with the knowledge and consent of the defendant and while there acting as an air raid warden was protecting the property of the defendant as well as the lives of defendant's tenants. He, therefore, was not a mere licensee, and I so decide. The theory of plaintiff's case must be borne in mind throughout; he doesn't complain he was permitted to use the roof and by reason thereof sustained the injuries; he complains of no injury consequent upon its use, but solely of defendant's failure to warn him of the hidden danger or trap. Defendant knew or must be assumed to have known that the purpose of air raid drills was to produce " total darkness ", that when the condition of total absence of light was produced the recession of the roof constituted a hidden hazard and trap. For his failure to warn of its existence he is liable for injuries suffered consequent thereon (*Jenkins* v. *313–321 W. 37th St. Corp., supra*).

Neither the industry and scholarship of counsel nor the research of the court has unearthed any English authority that might become a beacon to light the pathway of this decision. It is very interesting to note in passing that in England, despite nocturnal darkness and incessant bombings, that country's Legislature failed to recognize the need for the passage of a statute of immunity similar to that under discussion but was content to leave the rights and duties of men to the benign protection of the common law which the judges of the law courts rigidly enforced, notwithstanding the exigencies of war.

The learned counsel for the defendant puts great stress upon two cases in the Federal courts wherein the section now under consideration was held to be a bar to recovery (*Smith* v. *Town of Orangetown*, 57 F. Supp. 52, affd. 150 F. 2d 782; *Gaglio* v. *City of New York*, 143 F. 2d 904).

In my judgment neither of them may be construed as applicable to the facts of the instant case. The *Smith* case (*supra*)

was an attempt at compliance with a rule or promulgation of constituted authority and it was held that the question of '' good faith '' in such compliance was decided upon competent evidence by the jury. It was also suggested that the jury may have found no evidence of negligence (see p. 56 of the opinion). In the *Gaglio* case (*supra*) it was found that defendant was duly complying with rules and regulations of recognized authority concerning regulation of light. Further, the very condition that caused the accident (darkness) was the very design intended to be effectuated by air raid drills and clearly the Legislature intended to grant immunity in those cases where the negligence alleged is failure to provide adequate light with resulting darkness. Obviously, these cases give no aid to the solution of the present problem.

The Legislature knew the purpose of air raid drills was to produce darkness and train personnel to operate therein for the protection of persons and property in the event of an actual air raid. It intended and provided by section 40 to grant those in good faith engaged in such drills or raids immunity in case of injury sustained as a result of conditions naturally produced through them. Such conditions may be total darkness in one case or some instrumentality in another, but either the condition or the instrumentality causing the injury must be occasioned by or used in air raids or drills. The recession of the roof adjacent to the open window was not caused or conditioned by reason of air raids or air raid drills. It may not be said that the failure of the defendant to warn of the existence of a hidden and hazardous trap was due to or consequent upon an air raid or drill. Upon reason and authority I hold and decide that section 40 of the Act of 1942 (New York State War Emergency Act) has no application to the facts of the instant case and is not a bar to plaintiff's recovery.

The undisputed evidence established very serious and permanent injuries and actual expenditures of large sums of money in an attempt to effectuate a cure. The nature of the injuries admittedly are of such character as to permanently impair the use and mobility of plaintiff's feet, necessitating in all likelihood future medical and surgical services. The long period of hospitalization and the pain, suffering and permanency of the injuries require an award of substantial damages. I therefore decide that plaintiff is entitled to a judgment or verdict in the sum of $40,000 and direct that judgment be entered accordingly. All motions made at the close of the entire case not in consonance and accord with this decision and judgment are denied, with exceptions granted.