232 Minn. 394 (1951)
FRANK SHYPULSKI
v.
WALDORF PAPER PRODUCTS COMPANY.[1]
No. 35,257.
Supreme Court of Minnesota.
January 12, 1951.
Murnane & Murnane, for appellant.
Lewis L. Anderson, for respondent.
William M. Serbine, Corporation Counsel, and Marshall F. Hurley and Robert E. O'Connell, Assistant Corporation Counsel, filed a brief as amici curiae on behalf of the City of St. Paul.
*395 LORING, CHIEF JUSTICE.
In this action, plaintiff, a fireman, sought to recover damages for personal injuries suffered by him while performing his duties on the premises of the Waldorf Paper Products Company, a corporation. Defendant demurred to the complaint. The court overruled the demurrer and certified the question involved as important and doubtful. Defendant appealed from the order overruling its demurrer.
This is an action in tort. Plaintiff is a fireman employed by the St. Paul fire department. Defendant is the owner of a large manufacturing plant located in St. Paul. Defendant's manufacturing plant includes, among other buildings, a warehouse which is used for the storage of wastepaper. Some time prior to the date of the accident here in controversy, defendant constructed a wall of concrete blocks in its warehouse. It is alleged that the wall, by reason of its construction, could not withstand lateral pressure of any amount. It is also alleged that the wall was a trap,[2] dangerous to anyone entering the warehouse at a time when there was any lateral pressure against the wall, and that these facts were known to defendant.
About 11:22 p.m. on the evening of June 8, 1949, a large fire broke out in the warehouse where the wall of concrete blocks had been constructed. Plaintiff was on duty at that time and responded to the alarm of fire. Plaintiff and other firemen succeeded in extinguishing the fire and thereafter entered the warehouse to make certain that the fire had been entirely extinguished. During the time of the fire and subsequent thereto, officers, agents, and employes of defendant were present and observed the actions of plaintiff and the other firemen. These persons gave no warning to the firemen about the wall of concrete blocks. While plaintiff and other *396 firemen were in the warehouse, the concrete wall collapsed and fell upon plaintiff and other firemen, killing three firemen and seriously injuring plaintiff.
On these facts, we are presented with the problem of determining what duty is owed to a fireman who enters upon a landowner's premises in response to a call of duty. The first thing to be recognized is that firemen, policemen, and similar personnel have a status sui generis. Although firemen are frequently described as licensees, it is apparent that they are not licensees in the usual sense of being licensed to enter by virtue of the landowner's consent.[3] Firemen make their entry under license of law, and only in that sense are they licensees.[4] The landowner's consent or protest to a fireman's entry is immaterial, because his consent is unnecessary and his protest is legally unavailing.[5] Numerous opinions and several legal writers have amply explained why firemen cannot be fitted into any of the traditional categories grouping persons who enter upon the land of another.[6] Any rule that flatly categorizes firemen with trespassers disregards the fact that firemen, unlike trespassers, enter rightfully. Any rule that flatly categorizes firemen with invitees or licensees disregards the fact that firemen, unlike either of the latter, may enter premises without invitation or license of the owner. Firemen are regarded as making their entry primarily for the *397 purpose of performing a duty owed to the public.[7] Although the benefit of their services may accrue entirely to an individual property owner, that fact is regarded as incidental.
Since firemen have the unique status just described, it follows that the duties owed to them may properly be unique. Because the fireman's visit is normally unexpected[8] and because he cannot be excluded, the courts, both in this state and elsewhere, have been reluctant to hold that landowners owe a duty to firemen to maintain their premises in a reasonably safe condition.[9] There would be an obvious hardship in holding otherwise, because landowners would then be under compulsion to keep all parts of their premises in a condition perhaps uncalled for by the normal use to which the premises are devoted. The rule that firemen must accept the premises as they find them is founded not only upon dictates of a public policy looking to the protection of landowners from undue burdens,[10] with the dangerous situation, to adopt his own means of saving his property, and to delay summoning aid until perhaps greater danger would be threatened to the public."
*398 Since Mulcrone v. Wagner, 212 Minn. 478, 4 N.W. (2d) 97, 141 but also upon a public policy looking to the protection of the general public. As one court pragmatically stated (Suttie v. Sun Oil Co. 15 Pa. D. & C. 3, 5):
"* * * An owner, facing knowledge that he risks being mulcted in damages by those whom he summons to aid in the extinguishment of a fire, would be strongly tempted by self-interest to temporize A.L.R. 580, and Hamilton v. Minneapolis Desk Mfg. Co. 78 Minn. 3, 80 N.W. 693, clearly hold that an owner or an occupant of a building owes no duty to keep it in a reasonably safe condition for members of a public fire department, no liability of defendant in the present case can be predicated upon the existence of any defect in the condition of its warehouse wall. The question remaining is whether defendant owed plaintiff any duty at all which it neglected to perform. On this question, the Mulcrone case is the last word in this state. There, the court stated the general rule to be that firemen are licensees, to whom the owner or occupant owes no duty except to refrain from injuring them wilfully or wantonly and to exercise ordinary care to avoid imperiling them by active conduct. When urged to pronounce a more liberal rule, the court stated (212 Minn. 482, 4 N.W. [2d] 99):
"* * * it will be observed that Professor Prosser concedes * * * `Firemen * * * are held almost uniformly to enter under a bare license, and to be entitled at most to disclosure of known dangers.'"
Since the Mulcrone case did not involve facts showing a failure to disclose a concealed danger,[11] the court was not called upon to determine whether, as Professor Prosser suggests, a landowner has a duty to disclose hidden dangers. Because the court in the Mulcrone case appears to have reserved its decision on that question, it comes to us in the present case as one of first impression. In considering this question, we are well aware that many courts have *399 held that firemen are entitled to be protected only against wilful or wanton injury, and, in that respect, that firemen have been given no greater protection than trespassers and bare licensees.[12] The questionable propriety of treating firemen as if they were licensees or trespassers has already been discussed. At least two legal writers have even criticized the rule that bare licensees are to be protected only against wilful or wanton injury.[13] Mr. Dunnell has described the so-called "wilful or wanton" rule as "a barbaric formula,"[14] and Mr. Bohlen has ably demonstrated that the rule is founded upon a feudal concept of property rights anachronistic in modern law.[15] Even the rule that firemen must accept premises as they find them has been described by this court as being a hard rule.[16] It is apparent that both in Minnesota and elsewhere the trend of decisions is to avoid extending these harsh rules beyond their present limits, and, at least, in the case of the "wilful or wanton" rule, the *400 tendency is to whittle it away with exceptions.[17] At the same time, a respectable body of authority has developed to support the rule that firemen are entitled to be warned of hidden dangers known to the landowner or occupant. Mason Tire & Rubber Co. v. Lansinger, 15 Ohio App. 310, affirmed, 108 Ohio St. 377, 140 N.E. 770; Beehler v. Daniels, Cornell & Co. 18 R.I. 563, 29 A. 6, 27 L.R.A. 512, 49 A.S.R. 790; Jenkins v. 313-321 W. 37th St. Corp. 284 N.Y. 397, 31 N.E. (2d) 503, rehearing denied, 285 N.Y. 614, 33 N.E. (2d) 547; Schwab v. Rubel Corp. 286 N.Y. 525, 37 N.E. (2d) 234, reversing 260 App. Div. 946, 23 N.Y.S. (2d) 222; James v. Cities Service Oil Co. 66 Ohio App. 87, 31 N.E. (2d) 872; Cities Service Oil Co. v. Dixon, 14 Ohio L. Abs. 203; Cities Service Oil Co. v. Sause, 14 Ohio L. Abs. 429, petition dismissed, 128 Ohio St. 49, 190 N.E. 408; Clinkscales v. Mundkoski, 183 Okl. 12, 79 P. (2d) 562; Smith v. Twin State G. & E. Co. 83 N.H. 439, 144 A. 57, 61 A.L.R. 1015; Restatement, Torts, § 345.
In Jenkins v. 313-321 W. 37th St. Corp. 284 N.Y. 397, 31 N.E. (2d) 503, rehearing denied, 285 N.Y. 614, 33 N.E. (2d) 547, the New York court of appeals held that if a corporation's agents have knowledge of an unusual hazard existing on the corporation's premises, and, if they have the opportunity, they are under a duty, owed by the corporation, to give firemen warning of the peril.
In Smith v. Twin State G. & E. Co. 83 N.H. 439, 449, 144 A. 57, 62, 61 A.L.R. 1015, where the court was confronted with a case where a leak in defendant's gas main resulted in an explosion which injured a fireman, the court stated:
*401 "The search for escaping gas naturally took the decedent to the place of peculiar and hidden danger. The defendant knew about it while the decedent did not. It had the duty of due care to warn him about it if it had reasonable opportunity to give warning after the danger existed, and due care called for warning if there was enough chance of danger to the decedent to prompt men of ordinary prudence in the defendant's place to warn him."
In Mason Tire & Rubber Co. v. Lansinger, 15 Ohio App. 310, 316, the Ohio court of appeals stated:
"If the owner knows that a licensee is upon his premises and makes no effort to warn him of the dangers, and the circumstances are such that it would justify a belief that the owner was indifferent to the injuries which might happen to him, the owner is liable. We think the same rule should be applied in favor of a fireman who is on the premises attempting to extinguish a fire thereon."
The court also stated (15 Ohio App. 319):
"* * * In failing to give [a fireman] * * * warning of a hidden peril the owner would be lacking in the common duties of humanity."
Certainly, no meritorious reason can be advanced to justify the view that a property owner, with knowledge of a hidden peril, should be allowed to stand by in silence when a word of warning might save firemen from needless peril. The burden of a duty to warn of hidden perils falls lightly upon the landowner in comparison with the cost of his silence, which is frequently measured in the lives and limbs of firemen and in the sorrow and suffering of their families. Although firemen assume the usual risks incident to their entry upon premises made dangerous by the destructive effect of fire, there is no valid reason why they should be required to assume the extraordinary risk of hidden perils of which they might easily be warned. Two courts at least have held that firemen do not assume such risks, and, for the reasons already stated, we regard that holding *402 as sound. Smith v. Twin State G. & E. Co. 83 N.H. 439, 144 A. 57, 61 A.L.R. 1015; Campbell v. Pure Oil Co. 15 N.J. Misc. 723, 194 A. 873.
In spite of the recognized split of authority on the question presented in this case, we believe that the better rule by far is that landowners and occupants alike owe a duty to firemen to warn them of hidden perils where the landowner or occupant has knowledge of the peril and the opportunity to give warning. Having determined that the complaint in this case states a cause of action in tort based upon defendant's alleged failure to warn plaintiff of the hidden danger presented by defendant's unstable warehouse wall, it is unnecessary to consider plaintiff's additional contention that his complaint also states a cause of action based upon alleged violations of two city ordinances.
Affirmed.
NOTES
[1] Reported in 45 N.W. (2d) 549.
[2] The word "trap," although originally used to designate a device or condition created with intention to injure, has come to mean any kind of hidden, dangerous condition, and no intent to injure is necessarily implied by the word. Prosser, Torts, § 78, p. 631. See, Mix v. City of Minneapolis, 219 Minn. 389, 18 N.W. (2d) 130, where the terms "trap" and "concealed dangers" are used almost synonymously.
[3] Meiers v. Fred Koch Brewery, 229 N.Y. 10, 127 N.E. 491, 13 A.L.R. 633; Smith v. Twin State G. & E. Co. 83 N.H. 439, 144 A. 57, 61 A.L.R. 1015; Ryan v. C. & N.W. Ry. Co. 315 Ill. App. 65, 42 N.E. (2d) 128; Mason Tire & Rubber Co. v. Lansinger, 15 Ohio App. 310, affirmed, 108 Ohio St. 377, 140 N.E. 770; Bohlen, The Duty of a Landowner Towards Those Entering His Premises of Their Own Right, 69 U. of Pa. L. Rev. 142, 147; Prosser, Torts, § 78, p. 628; 22 Minn. L. Rev. 898.
[4] See authorities cited in footnote 3, supra. One court, finding it difficult to determine the status of a policeman, termed him a "quasi licensee." Burroughs Adding Mach. Co. v. Fryar, 132 Tenn. 612, 179 S.W. 127, L.R.A. 1916B, 791.
[5] See authorities cited in footnote 3, supra.
[6] See authorities cited in footnote 3, supra.
[7] Mason Tire & Rubber Co. v. Lansinger, 15 Ohio App. 310, affirmed, 108 Ohio St. 377, 140 N.E. 770; Lunt v. Post Print. & Pub. Co. 48 Colo. 316, 110 P. 203, 30 L.R.A.(N.S.) 60, 21 Ann. Cas. 492; 5 Minn. L. Rev. 154. Cf. Mulcrone v. Wagner, 212 Minn. 478, 4 N.W. (2d) 97, 141 A.L.R. 580, where this court held that a fire inspector performs a duty owed to the public rather than to the occupant of the building inspected.
[8] The fact that firemen enter unexpectedly and sometimes under unusual circumstances has been suggested as a basis for distinguishing them from other public officials who enter upon private property. See, Boneau v. Swift & Co. (Mo. App.) 66 S.W. (2d) 172, 175; 26 Col. L. Rev. 116, 117.
[9] Hamilton v. Minneapolis Desk Mfg. Co. 78 Minn. 3, 80 N.W. 693; Mulcrone v. Wagner, 212 Minn. 478, 4 N.W. (2d) 97, 141 A.L.R. 580; Woodruff v. Bowen, 136 Ind. 431, 34 N.E. 1113, 22 L.R.A. 198; Beehler v. Daniels, Cornell & Co. 18 R.I. 563, 29 A. 6, 27 L.R.A. 512, 49 A.S.R. 790; Gibson v. Leonard, 143 Ill. 182, 32 N.E. 182, 17 L.R.A. 588, 36 A.S.R. 376. See, also, 4 Dunnell, Dig. & Supp. § 6985, note 62; Prosser, Torts, § 78, note 90.
[10] 18 Harv. L. Rev. 397.
[11] The court stated (212 Minn. 480, 4 N.W. [2d] 98):

"* * * There is neither pleading nor proof that the defect was in the nature of a trap, nor was there anything in the way of concealment about it."
[12] Cudahy Packing Co. v. McBride (8 Cir.) 92 F. (2d) 737, certiorari denied, 303 U.S. 639, 58 S. Ct. 526, 82 L. ed. 1099; Lunt v. Post Print. & Pub. Co. 48 Colo. 316, 110 P. 203, 30 L.R.A.(N.S.) 60, 21 Ann. Cas. 492; Gibson v. Leonard, 143 Ill. 182, 32 N.E. 182, 17 L.R.A. 588, 36 A.S.R. 376; Todd v. Armour & Co. 44 Ga. App. 609, 162 S.E. 394; Pincock v. McCoy, 48 Idaho 227, 281 P. 371; Woodruff v. Bowen, 136 Ind. 431, 34 N.E. 1113, 22 L.R.A. 198; Steinwedel v. Hilbert, 149 Md. 121, 131 A. 44; Burroughs Adding Mach. Co. v. Fryar, 132 Tenn. 612, 179 S.W. 127, L.R.A. 1916B, 791; Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 242 S.W. 646.
[13] 4 Dunnell, Dig. & Supp. § 6985; Bohlen, Fifty Years of Torts, 50 Harv. L. Rev. 725, 739-740.
[14] 4 Dunnell, Supp. § 6985, p. 376.
[15] Bohlen, Fifty Years of Torts, 50 Harv. L. Rev. 725, 735; Bohlen, The Duty of a Landowner Toward Those Entering His Premises of Their Own Right, 69 U. of Pa. L. Rev. 237. In Ryan v. C. & N.W. Ry. Co. 315 Ill. App. 65, 42 N.E. (2d) 128, Mr. Bohlen's views are quoted with approval.
[16] Hamilton v. Minneapolis Desk Mfg. Co. 78 Minn. 3, 80 N.W. 693; Mulcrone v. Wagner, 212 Minn. 478, 4 N.W. (2d) 97, 141 A.L.R. 580.
[17] Ryan v. C. & N.W. Ry. Co. 315 Ill. App. 65, 42 N.E. (2d) 128; 4 Dunnell, Supp. § 6985; Bohlen, Fifty Years of Torts, 50 Harv. L. Rev. 725, 736. In Mix v. City of Minneapolis, 219 Minn. 389, 18 N.W. (2d) 130, this court recognized an exception to the "wilful or wanton" rule in the case of a motorist who was injured while trespassing upon a vacated street. There, it was held that a jury might find the city to have been negligent in failing to erect and maintain appropriate barriers and warning signs at the point where the street ended.