**UNA LOUIS, RICHARD LETTSOME, LEROY EMMANUEL FRETT, JULIO H. FRANCIS III, WAYNE J. HEYLIGER, DERWIN H. HODGE, ERNEST L. MATTHIAS, JR., CHARLES RUSSELL DANIEL, CHARLES FRANKLIN SMITH, VERNON MONSANTO, GLENN A. FRANCIS, BRIAN CHAPMAN, and WINGROVE CLARK, Plaintiffs**

**v.**

**CANEEL BAY, INC., Defendant**

Civil No. 339/2000

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

July 21, 2008

9

LEE ROHN, ESQ., Law Offices of Rohn and Cameron, St. Croix, USVI,
*Attorney for the Plaintiffs.*

RICHARD FARRELLY, ESQ. Birch, DeJongh and Hindels, St. Thomas, USVI,
*Attorney for the Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(July 21, 2008)

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment. Plaintiffs have not responded to the Motion. Based upon the reasons set forth below, the Motion will be GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a group of firefighters who responded to reports of a fire at a housekeeping building at the Caneel Bay Resorts ("Caneel Bay") in St. John, U.S.V.I, on September 20, 1999. Plaintiffs, who appear not to have worn any protective equipment, arrived at 9:15 p.m. and noticed several multi-colored flames in the building, which indicated that unknown substances were burning. Plaintiffs contend that they asked Defendant's representatives whether there were any hazardous substances in the building but they simply stated that there were some cleaning substances inside. While fighting the blaze, Plaintiffs and Defendant's employees broke the back wall of the building with a backhoe. After the fire was extinguished, it was discovered that the walls of this building contained particles of asbestos which Plaintiffs may have inhaled.

After learning that they may have been exposed to asbestos, Plaintiffs filed a three (3) Count Complaint seeking damages from Defendant for: (1) "Negligently Failing to Abate a Hazardous Substance as required by Title 12 V.I.C. §§ 201, 215"; (2) "Medical Monitoring" and (3) "Intentional Infliction of Emotional Distress."

Defendant Caneel Bay denied the allegations in the Complaint and raised several affirmative defenses, including Plaintiff's entitlement to damages and failure to establish any liability.

## II. ANALYSIS

### (1) Standard for granting a Motion for Summary Judgment

FED. R. CIV. P. 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

The moving party bears the initial burden of proving that there is no genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586,106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). To avoid Summary Judgment, the adverse party "must set forth specific facts to show that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

In deciding the Motion, "all reasonable inferences to be drawn from the presented evidence . . . must be examined in the light most favorable to the non-moving party." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962)). The Court should grant summary judgment if it concludes that no reasonable jury could find in the non-moving party's favor on the basis of the record as a whole. *Matsushita, supra,* 475 U.S. at 587, 106 S. Ct. at 1356.

### (2) Motion for Summary Judgment

Defendant raises three major contentions. First, Defendant argues that Plaintiffs' claims for "Negligence" and "Medical Monitoring" fail as a matter of law because of the "Firefighter's Rule," which generally bars firefighters from recovering damages for ordinary negligence and known risks that they encounter in the line of their duty as firefighters. *See, e.g., Carson v. Headrick*, 900 S.W.2d 685, 691 (Tenn. 1995); *Phillips v. Hallmark Cards, Inc.*, 722 S.W.2d 86, 89 (Miss. 1987). Defendant further argues that Plaintiffs cannot assert a claim under the Virgin Islands Air Pollution statute because they are not in the statute's zone of interest. Defendant also contends that the statute, codified at Title 12 V.I.C. § 201, protects the public generally and does not mention firefighters specifically, thereby excluding them from its zone of interest.

Second, Defendant argues that there is no genuine issue of material fact with respect to injury and causation because Plaintiffs have failed to show

11

any injuries due to their exposure to asbestos. Defendant contends that "Medical Monitoring" does not satisfy the injury requirement because it is speculative harm rather than the concrete harm that Courts normally require to establish an injury. *See, e.g., Temple-Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999); *McClenathan v. Rhone-Poulenc Corp., Inc.*, 926 F. Supp. 1272, 1275-76 (S.D. W. Va. 1996).

Finally, Defendant contends that no reasonable jury could find that its conduct rose to the level of "Intentional Infliction of Emotional Distress" because it did not "knowingly and intentionally" fail to disclose the presence of asbestos in the building. Moreover, Defendant contends that if its employees acted "knowingly and intentionally," their conduct could not be imputed to Defendant.

Plaintiffs did not file an Opposition to the Motion and Defendant subsequently filed a "Motion to Deem Motion for Summary Judgment Conceded" pursuant to LRCi 7.1(j).

### (3) Firefighters are not barred from recovering damages for injuries caused by negligently created conditions if they were not warned about those conditions.

A firefighter's right to recovery is a matter of first impression in this jurisdiction. As such, this lawsuit raises two fundamental questions, *i.e.* (a) Can firefighters recover damages for injuries they sustained in the scope of their duty? and (b) if they are allowed to recover for injuries they sustained in the scope of their duty, under what circumstances can they recover damages?

Defendant contends that the "Firefighter's Rule" bars firefighters from recovering damages for risks "peculiar to their employment."[1] The justification for application of the common law "Firefighter's Rule" includes assumption of the risk, public policy considerations and the undue burdens that would result from allowing firefighters to recover damages for injuries. *See, e.g., Keith Benjamin v. Sodus Cold Storage Company*, 149 A.D.2d 937, 937-38, 540 N.Y.S.2d 70, 540 N.Y.S.2d 230 (N.Y.A.D. 1989); *Phillips v. Hallmark Cards*, 722 S.W.2d 86, 87-88

---

[1] Plt's Mot. for Summ. J. at 4, ¶ 2 (citing *Carson v. Headrick*, 900 S.W.2d 685, 691 (Tenn. 1995)).

(Miss. 1987); *Bay Area Rapid Transit v. Superior Court of Alameda County*, 113 Cal.App.3d 1018, 1020, 170 Cal. Rptr. 390 (Cal. Ct. App. 1980). The strictest form of this rule bars firefighters from recovering damages for any injuries they incur in the scope of employment.

■ In the absence of local law, the Court is required to apply the Restatements of the law. Title 1 V.I.C. § 4. RESTATEMENT (SECOND) OF TORTS § 345 (1965) addresses the status of firefighters and the duties owed to them by the possessor of land and provides as follows:

> Except as stated in subsection (2), the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee.

■ The Restatement further explains that "firefighters . . . are commonly held by Courts to stand on the same footing as licensees" while acknowledging that their status is *sui generis. Id.* § 345, cmt. c & d. According to the Restatement, a possessor of land would owe a duty to warn a licensee about known latent defects. *Id.* § 341.

■ The Restatement's acknowledgement that possessors of land must at least inform firefighters about known hazards and risks reflects a progression in the "Firefighter's Rule" resulting from dissatisfaction with its strictest form. Thus, the Restatement permits a firefighter to recover for injuries from known hazards and unreasonable risks that the possessor fails to warn the firefighter about despite having an opportunity to do so. *See, e.g., Clark v. Corby*, 75 Wis.2d 292, 297-98, 249 N.W.2d 567, 570 (1977); *Ryan v. Rademacher*, 142 S.W.3d 846, 851 (Mo. App. Div. 1969); *Jenkins v. 312-321 West 37th St. Corp.*, 284 N.Y. 397, 401-02, 31 N.E.2d 503 (1940). A firefighter may even be permitted to maintain an action for injuries he sustains where (1) the possessor of land fails to exercise reasonable care in maintaining the property, (2) it is foreseeable that a firefighter could exercise a privilege to enter the property and (3) a firefighter actually enters the property in the exercise of this privilege, performs his duty in a foreseeable manner and is injured because of the negligent conditions. *Dini v. Naiditch*, 20 Ill.2d 406, 416-17, 170 N.E.2d 881, 886 (1960). This is the minority rule, however.

■ Under the Restatement, a firefighter has a unique privilege and is *sui generis*. The Restatement requires a possessor of land to inform a firefighter about all known unreasonable risks and hazards on the land

when he has an opportunity to do so. Thus, if Defendant breached this duty, Plaintiffs have the right to recover from it under local law.

### (4) Firefighters cannot assert a negligence claim for a violation of the Territory's "Air Pollution Control" statute.

Plaintiffs assert a negligence claim grounded on the Defendant's duty to abate harmful air pollutants under the Virgin Islands "Air Pollution Control" Act. Defendant contends that the Virgin Islands "Air Pollution Control" statute's failure to expressly include firefighters within the zone of interest is fatal to Plaintiffs' claim that it negligently failed to abate harmful pollutants pursuant to Title 12 V.I.C. § 201. Defendant also argues that the statute does not authorize a tort remedy because it establishes numerous civil and criminal penalties for its violation. Plaintiffs cannot assert a claim under the Virgin Islands Air Pollution Control Act because the Court finds, as a matter of law, that the type of harm Plaintiffs contend is not negligence *per se* under the statute.

The "Air Pollution Control Act's" "declaration of purpose" indicates that it seeks "to promote health, safety and welfare" and "to prevent injury to human, plant and animal life, and property." Title 12 V.I.C. § 201. The purpose of the Act is to protect residents of the Virgin Islands from emissions of pollutants in sufficient quantities deemed by the Commissioner, through regulations, to be harmful. Title 12 V.I.C. § 208. Once these standards have been established, residents of the Virgin Islands have an affirmative duty to abate any pollution in excess of these regulatory standards. *Id.*

A violation of a statute establishing an affirmative duty is generally considered negligence *per se* if the claimant is within the statute's zone of interest. RESTATEMENT (SECOND) OF TORTS § 286A[2]; *see also Dini v. Naiditch*, 20 Ill.2d 406, 417-18, 170 N.E.2d 881, 886 (1960) ("a violation

---

[2] RESTATEMENT (SECOND) OF TORTS § 286A states that:

The Court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which that harm results

14

of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence and the injured party has a remedy under the statute if it includes him within its purview and the violation proximately caused his injury"); *Clark v. Corby*, 75 Wis.2d 292, 299-300, 249 N.W.2d 567, 571-72 (1977) ("violation of the housing code was negligence *per se* if it included firefighters within its ambit"). Furthermore, a legislatively enacted system of penalties does not preclude a claimant from maintaining an action for negligence based on the opposing party's failure to perform those same duties. RESTATEMENT (SECOND) TORTS § 286.

██ A generally applicable statute enacted to protect the public's health and safety also includes firefighters, as members of the public and foreseeable entrants on the premises, within its zone of interest. *See Maloney v. Hearst Hotels Corporation*, 274 N.Y. 106, 110-11, 8 N.E.2d 296 (1937); *see also Drake v. Fenton*, 237 Pa. 8, 12, 85 A. 14 (1912) (holding that a generally applicable statute was passed for the benefit of all persons "lawfully on the premises"); *but see Hamilton v. Minneapolis Desk-Mfg. Co.*, 78 Minn. 3, 5-6, 80 N.W. 693, 694 (1899) (holding that firefighters were not protected by a law requiring the enclosure of elevator shafts because the statute was expressly applicable to "employees" only).

██ The "Air Pollution Control Act's" "declaration of purpose" indicates that it is generally applicable to the public because it seeks "to promote health, safety and .welfare" and "to prevent injury to human, plant and animal life, and property." Title 12 V.I.C. § 201. While the statute does not imply a private right of action for a violation of its terms, it nevertheless includes firefighters within its ambit and therefore provides the basis for a negligence *per se* action since Plaintiffs are suing to recover for exposure to pollutants covered by the statute.

██ It is much less clear, however, that the statute addresses the type of brief and inadvertent exposure to a pollutant would support such a claim. *See* Title 12 V.I.C. § 215(c)(5) (citing "Clean Air Act" at 42 U.S.C. § 7412). The statute addresses emissions but there is no indication from the statutory language that it applies to all inadvertent releases of harmful substances. The Act gives the Commissioner of the Department of Planning and Natural Resources the authority "to establish the limitations of levels, concentrations or quantities of various air contaminants necessary to protect the public health." Title 12 V.I.C. § 208. It would require a significant leap of logic to find that the statute bans all emissions

of asbestos, no matter how small and inadvertent, especially considering that many older buildings and products contain minor amounts of asbestos. A holding to the contrary would indicate that owners have a duty to tear down any building with any amount of asbestos or risk liability under the statute, which the Court declines to do without more specific statutory language or regulations.

■ Nevertheless, Title 12 V.I.C. § 219 preserves the cause of action for personal injury caused by asbestos exposure that is available at common law. Title 12 V.I.C. § 219(b) provides that "(the Air Pollution Control Act) shall not be construed to abridge, limit or otherwise impair the right of any person to damages or other relief on account of injury to persons or property and to maintain any action or other appropriate proceeding . . ."

As established earlier, firefighters are not barred from asserting a cause of action for injury caused by unknown harmful conditions that they are not warned about. Thus, they can still assert an independent claim for injury based on asbestos exposure under the common law. *See Dunn v. Owens-Corning Fiberglass*, 774 F. Supp. 929, 934 (D.C.V.I. 1991) (Plaintiff sued a manufacturer of products containing asbestos for personal injuries caused by asbestos exposure). For the reasons stated below though, their claim fails because there is no genuine issue of material fact with respect to their alleged injuries.

### (5) Plaintiffs have not shown that there is a genuine issue of material fact indicating that asbestos inhalation injured them.

Plaintiffs are seeking compensatory and punitive damages for physical and emotional injuries and the increased risk that they are likely to suffer asbestos-related diseases ("medical monitoring"). Assuming Plaintiffs inhaled asbestos while performing their duties at the Caneel Bay on September 20, 1999, the record does not contain any evidence from which a reasonable jury could find that Plaintiffs were injured by exposure to asbestos.

■ ■ Virgin Islands law dictates that a Plaintiff in a negligence action must demonstrate "harm." RESTATEMENT (SECOND) OF TORTS § 388 (1965); *see also Purjet v. Hess-Oil Virgin Islands Corp.*, 22 V.I. 147, 149 (D.V.I. 1986). Harm is defined as the existence of loss or detriment to a person resulting from any cause. RESTATEMENT (SECOND) TORTS § 7. A fundamental requirement for any Plaintiff in a negligence

16

action, including an action for damages stemming from asbestos exposure, is "physical injury."[3] Ordinarily, a mere risk of future harm or anxiety without physical injury is insufficient to establish legal harm.[4]

 It has been held that "pleural thickening" of the lungs and other physical symptoms of asbestos exposure are compensable injuries. *Dunn v. HOVIC*, 28 V.I. 526, 531, 1 F.3d 1362, 1366-67 (3d. Cir. 1993). Furthermore, where an individual has a reasonable fear of developing cancer or other asbestos-related conditions stemming from a present condition, such fear and anxiety are also compensable. *Id.* at 532-33.

In *Dunn*, the Plaintiff had been repeatedly exposed to asbestos at the workplace for several years and had 'massive' pleural plaques, a demonstrable decrease in lung capacity, pronounced physical effects and multiple physicians had diagnosed him with asbestosis, an asbestos related condition of the lungs. *Id.* at 529-31. The Court concluded that the demonstrated detrimental impact on Plaintiff's physical health was sufficient evidence for a jury to conclude that Plaintiff was injured. *Id.* The Court also concluded that his fear of developing cancer and mesothelioma in the future based on his past exposure to asbestos was an injury because he had a "reasonable" fear of future symptoms in light of the present deterioration of his health. *Id.* at 532-33.

Unlike the *Dunn* plaintiff, these Plaintiffs base their claim merely on future expectations of harm and fail to show any present impact from their asbestos exposure. Dr. Audria Thomas, a Board-certified immunologist practicing medicine in the Virgin Islands, conducted multiple evaluations of each one of the Plaintiffs between September, 2000, and March, 2002. Dr. Thomas's findings did not establish that asbestos exposure had any demonstrable physical impact on Plaintiffs' health. Based on Dr. Thomas's findings, the Court concludes that no reasonable jury could find that Plaintiffs' brief exposure to asbestos has resulted in a legal injury.

---

[3] *Purjet, supra*, 22 V.I. at 149; *see, e.g., Landry v. Florida Power & Light Co.*, 799 F. Supp. 94, 96-97 (S.D. Fla. 1992); *McClenathan v. Rhone-Poulenc Corp., Inc.*, 926 F. Supp. 1272, 1275-76 (S.D.W. Va. 1996); *Temple-Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88, 91 (Tex. 1999).

[4] Note 3, *supra*.

17

i) *Plaintiffs Una Louis, Leroy Frett, Derwin Hodge, Charles Smith, Vernon Monsanto and Brian Chapman have not sustained any injuries linked to asbestos exposure.*

Dr. Thomas testified that Plaintiffs Una Louis, Leroy Frett, Derwin Hodge, Charles Smith, Vernon Monsanto and Brian Chapman have not sustained any lung disease or otherwise experienced asbestos-related physical impact.[5] In her deposition, she conceded that her examinations of these Plaintiffs had not revealed any asbestos-related changes to their lungs.[6] Therefore, the Court finds that no reasonable jury could conclude that the aforementioned Plaintiffs were injured by exposure to asbestos at Caneel Bay on September 20, 1999.

ii) *No reasonable jury could conclude that Plaintiffs Richard Lettsome, Wayne Heyliger, Ernest Matthias, Jr., Julio Francis, Charles Daniel, Glenn Francis and Wingrove Clark's mild lung disease was caused by asbestos exposure.*

Based on Dr. Thomas's testimony and medical records, the Court finds that no reasonable jury could find that Plaintiffs Richard Lettsome, Wayne Heyliger, Ernest Matthias, Jr., Julio Francis, Charles Daniel, Glenn Francis and Wingrove Clark were injured by asbestos exposure.

Mr. Richard Lettsome suffers from mild restrictive lung disease which could have been caused by cigarette smoking.[7] Dr. Thomas could not state with any reasonable degree of medical certainty that asbestos exposure caused his condition and conceded that his condition, in all likelihood, was a secondary effect of cigarette smoking.[8] Additionally, she did not provide any other evidence of injury to his lungs and respiratory system that might have been attributable to asbestos exposure. Dr. Thomas acknowledged that the medical community has found a link between cigarette smoking and restrictive lung disease and similarly concluded that Mr. Glenn Francis's mild restrictive lung disease was likely to be associated with his history of cigarette smoking.[9] Mr. Charles Russell

---

[5] Dr. Thomas was deposed by Defendant on November 25, 2003. Comp. Exh. A contains her medical records.

[6] *Tr. of Dep. of Dr. Thomas*

[7] *Tr. of Dr. Audria A. Thomas's Dep.* at p. 11.

[8] *Id.*

[9] *Id.* at 21-22.

Daniel was also diagnosed with mild, pulmonary restrictive lung disease that was likely to be an effect of cigarette smoking and asthma.[10]

While Wayne Heyliger, Ernest Matthias, Julio Francis, III, and Wingrove Clark also had mild restrictive lung disease, Dr. Thomas could not state with any degree of medical certainty that asbestos exposure caused their conditions without running more specific tests.[11] In addition, none of these Plaintiffs demonstrated any external, degenerative physical symptoms from asbestos exposure.

The evidence fails to establish any genuine issues with respect to whether Plaintiffs were harmed by their brief exposure to asbestos. Dr. Thomas has conceded that she did not run any specific diagnostic tests on these Plaintiffs to detect the presence of asbestos in their lungs and determine if they are suffering from asbestosis. The Court is also satisfied that Dr. Thomas is capable of identifying actual cases of asbestosis based on her testimony that she had previously identified an individual with asbestosis.[12] Dr. Thomas appeared confident that none of the Plaintiffs showed the "clinical symptomatology" of respiratory disease, such as shortness of breath, wheezing and coughing, that might have indicated asbestos had affected their physical health and would justify further diagnostic tests.[13] In addition, her testimony suggested that serious health problems were more likely to result from chronic exposure to asbestos for longer time periods unlike the Plaintiffs' brief exposure to asbestos in this case. These Plaintiffs show no physical symptoms of asbestos exposure and the mild disease of their lungs could be consequences of cigarette smoking and the voluminous exposure to smoke that is an occupational hazard for firefighters.

Thus, while accepting on this Motion for Summary Judgment that Plaintiffs were exposed to asbestos, none of them has established any present asbestos-related injury. At most, they have established latent conditions which have not been linked to asbestos inhalation. Further, while acknowledging the long latency period of many asbestos related conditions, the Court notes the length of time that this case has been

---

[10] Id.

[11] Id. at p. 14-21.

[12] Id. at 23.

[13] Id. at 31-32.

19

litigated and Plaintiffs' concomitant failure to supplement the record with any evidence of injury lends greater weight to its conclusion that no reasonable jury could find that they have not been injured by asbestos inhalation.

A comparison between this case and *Dunn* is instructive because *Dunn* demonstrates the type of present injury that would also makes future expectations of harm compensable. Unlike *Dunn,* Plaintiffs claim damages based entirely on expectations of future harm. While the Court does not seek to minimize the impact of asbestos inhalation, not every case of asbestos exposure results in serious harm. *Temple-Inland Forest Products Corp. v. Carter*, 993 S.W.2d 88, 93 (Tex. 1999). The Court must be especially careful in adhering to the requirement that a Plaintiff seeking damages demonstrate actual physical injury in asbestos exposure cases to ensure that meritorious cases are adequately compensated and frivolous cases are not overcompensated. *See id.*

## (6) No reasonable jury could find that Defendant's conduct was an Intentional Infliction of Emotional Distress.

Plaintiffs contend that Defendant's conduct in exposing them to asbestos was "Intentional Infliction of Emotional Distress." On this record, the Court finds that no reasonable jury could find for Plaintiffs on their claim for "Intentional Infliction of Emotional Distress." The elements of this claim are:

(i) Extreme and Outrageous conduct
(ii) Intent to cause emotional distress or reckless disregard of such consequences
(iii) Severe emotional distress
(iv) Emotional distress was caused by such extreme conduct

RESTATEMENT (SECOND) OF TORTS § 46(1) (1965).

The Plaintiffs have neither offered any specific evidence that Defendant acted in an extreme and outrageous manner nor have they specifically demonstrated that Defendant "knowingly and intentionally" engaged in conduct intended to cause emotional distress or that it recklessly disregarded such consequences of its conduct. In fact, the context in which Defendant's representatives informed Plaintiffs that there were cleaning substances in the building indicates that they were acting in a stressful environment rather than with any malicious intent, In

20

this context, the failure of Defendant's representatives to warn Plaintiffs that there was asbestos in the burning building is not the type of "extreme and outrageous conduct" that would be intolerable in a "civilized society," as Plaintiffs attempt to portray it, *Heywood v Cruzan Motors*, 792 F.2d 367, 371 (3d Cir. 1986).

Additionally, Plaintiffs have not shown that Defendant acted intentionally and knowingly because they have not offered any evidence that any of Defendant's employees at the site knew that there was asbestos in the building. Plaintiffs also fail to state a claim for "Intentional Infliction of Emotional Distress" because the actions of employees on September 20, 1999, could only be imputed to Defendant if they were acting within the scope of employment and intended to serve their employer's purposes. RESTATEMENT (SECOND) OF AGENCY § 219 (1958). The record does not provide any basis for finding that Defendant's employees were furthering its objectives or otherwise met the requirements for imputing an intentional tort to their employer under *respondeat superior* if they merely failed to warn Plaintiffs about asbestos in the building's walls of which they were probably unaware. Thus, there is no genuine issue of material fact with respect to Plaintiffs' allegations of "Intentional Infliction of Emotional Distress."

## CONCLUSION

Based upon the foregoing reasons, the "Motion for Summary Judgment" will be granted. An appropriate Order is attached.